UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEBRASKA

In re:

Eat Fit Go Healthy Foods, LLC, et al.[1]

        Debtors.

Chapter 11

Case No. 18-81127-TLS

(Jointly administered)

**MOTION OF LIVE WELL ENTERPRISES, LLC FOR (I) ENTRY OF AN ORDER COMPELLING EAT FIT GO HEALTHY FOODS, LLC AND/OR EAT FIT GO KITCHEN ARIZONA, LLC TO TIMELY PERFORM ALL POST-PETITION LEASE OBLIGATIONS PURSUANT TO 11 U.S.C. § 365(d)(3); AND (II) ALLOWANCE AND PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2)**

Live Well Enterprises, LLC, a Nebraska limited liability company ("Live Well"), by and through its undersigned counsel, moves the Court for an Order compelling Eat Fit Go Healthy Foods, LLC and Eat Fit Go Kitchen Arizona, LLC to timely perform all of their post-petition obligations under 11 U.S.C. § 365(d)(3) relating to a certain lease of nonresidential real property and for the ancillary relief specified herein.  In support of this Motion, Live Well respectfully states the following:

## I.  INTRODUCTION

In August, 2016, Eat Fit Go Healthy Foods, LLC ("Eat Fit Go") entered into a Lease Agreement with Live Well for nonresidential real property owned by Live Well.  In December, 2016, Eat Fit Go assigned its tenancy rights under the Lease Agreement to Eat Fit Go Kitchen Arizona, LLC ("Eat Fit Go Kitchen").  Eat Fit Go's assignment of the Lease Agreement to Eat

---

[1] The Debtors in this jointly administered case are: 18-81127-TLS Eat Fit Go Healthy Foods, LLC; 18-81121-TLS Eat Fit Go Arizona Kitchen, LLC; 18-81122-TLS Eat Fit Go Georgia Kitchen, LLC; 18-81123-TLS Eat Fit Go Healthy Foods Des Moines, LLC; 18-81124-TLS Eat Fit Go Healthy Foods Kansas City, LLC; 18-81125-TLS Eat Fit Go Healthy Foods Minnesota, LLC; 18-81126-TLS Eat Fit Go Healthy Foods Omaha, LLC; 18-81128-TLS Eat Fit Go Kansas City Kitchen, LLC; 18-81129-TLS Eat Fit Go Omaha Kitchen, LLC; 18-81130-TLS EFG Shared Services, LLC.

Fit Go Kitchen did not release Eat Fit Go from its obligations under the Lease Agreement. Both Eat Fit Go and Eat Fit Go Kitchen each filed voluntary Chapter 11 petitions for relief on July 31, 2018.

In violation of the obligations imposed upon both Eat Fit Go and Eat Fit Go Kitchen by 11 U.S.C. § 365(d)(3) and the Lease Agreement, both Eat Fit Go and Eat Fit Go Kitchen have failed to timely and fully pay rent arising under the Lease from and after July 31, 2018, the date these Chapter 11 proceedings were commenced (the "Petition Date"). The existing violations of Section 365(d)(3) and the refusal of Eat Fit Go and Eat Fit Go Kitchen to honor their respective Section 365(d)(3) obligations---other than under Court Order---cause Live Well to move this Court for entry of an Order compelling both Eat Fit Go and Eat Fit Go Kitchen to comply with their obligations under Section 365(d)(3) by immediately curing the default that exists with respect to rent that arose under the Lease on and after July 31, 2018. Alternatively, Live Well requests that the Court enter its Order granting Live Well an allowed administrative expense claim pursuant to 11 U.S.C. § 503(b)(1) with priority as provided in 11 U.S.C. § 507(a)(3) and requiring that such claim be immediately paid.

## II. JURISDICTION

1.      Eat Fit Go and Eat Fit Go Kitchen (together, the "Lessee Debtors") both commenced Chapter 11 proceedings by filing voluntary petitions for relief on July 31, 2018 (the "Petition Date").

2.      The Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue before this Court is proper pursuant to 28 U.S.C. 1409(a).

3.      The statutory predicates for the relief requested herein are 11 U.S.C. §§ 365(d)(3); 365(d)(4); 503(b)(1)(A); and 507(a)(2).

2

4.      This is a core proceeding arising within 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") that the Court has authority to hear and determine within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), and (M).

### III. FACTUAL BACKGROUND

5.      On August 16, 2016, Live Well and Eat Fit Go entered into that certain Lease Agreement (together with all exhibits, attachments, amendments and modifications thereto, the "Lease").   The Lease relates to real property and improvements located at 739 E. Dunlap Avenue, Phoenix, Arizona (the "Premises"), as is more particularly described in the Lease.  The Lease was assigned by Eat Fit Go to Eat Fit Go Kitchen pursuant to that Assignment of Lease Agreement (the "Lease Assignment") dated as of December 1, 2016.  The Lease Assignment did not provide for Eat Fit Go to be released of its obligations under the Lease to Live Well.  True and correct copies of the Lease and the Lease Assignment are attached hereto as Exhibit A and are incorporated herein by this reference.

6.      Pursuant to the terms of the Lease, the Lessee Debtors are required to, inter alia, (i) make fixed monthly Minimum Rent payments in the amount of $12,000/month which Minimum Rent is adjusted upward as monthly sales made by Eat Fit Go Kitchen equal or exceed certain specified levels.  *See* Lease at §4(a).   Because at least 6,000 meals were sold in a month preceding July 31, 2018, the amount of the monthly rent due each month from the Lessee Debtors as of August 1, 2018 was $20,000/month.  *Id.*  Additionally, pursuant to the Lease, the Debtors are obligated to pay Additional Rent, as defined in the Lease, including Additional Rent relating to real estate taxes levied upon the Property.  *See* Lease at §4(b).  Specifically, the Debtors are obligated to pay to Live Well each month Additional Rent equal to 1/12 of the real estate taxes for the then current year.  The real estate taxes levied against the Property for 2018

total $18,000; as a result, for each month during 2018, the Debtors were obligated to pay Live

Well Additional Rent for real estate taxes in the amount of $1,500.  *See* Lease, Section 4(b).

## IV.  REQUEST FOR RELIEF

**A.**     **Pursuant to 11 U.S.C. § 365(d)(3), the Court Should Require the Debtor to Make Immediate and Full Payment of the Minimum Rent and Additional Rent that Became Due Under the Lease On and After the Petition Date**.

7.     From and after the Petition Date, the Debtor has continuously occupied the

Property.  Notwithstanding the Debtor's continuous occupancy and possession of the Property,

the Debtor has not made any payments to Live Well since the Petition Date.

8.     Section 365(d)(3) of the Bankruptcy Code requires the Debtor to fully and timely

perform all post-petition obligations under an unexpired lease of nonresidential real property

arising from or after entry of an order for relief until assumption or rejection of the lease:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), arising from or after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.  The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. . . .

11 U.S.C. § 365(d)(3).

9.     The plain language of Section 365(d)(3) requires performance of "all the

obligations of the debtor" under an unexpired commercial lease of realty "until such lease is

assumed or rejected." 11 U.S.C. § 365(d)(3).  Section 365(d)(3) serves to protect landlords by

requiring debtors timely perform their obligations arising under a lease, since "the landlord under an

unexpired lease is an involuntary participant in the post-petition life of a debtor," and "they have

no choice but to provide the premises and the services required by the unexpired lease until it is

rejected." *In re Rhodes*, 321 B.R. 80, 90 (Bankr. N.D. Ga. 2005).  Therefore, Section 365(d)(3)

requires that the Debtor timely pay and perform all obligations arising under the Lease from and after the Petition Date. *See* 11 U.S.C. § 365(d)(3).

10.      Section 365(d)(3) protects landlords by requiring debtors timely to perform their obligations arising under a lease. *See In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3rd Cir. 2001). Section 365(d)(3) requires debtors immediately to pay their lease obligations in full *as they come due* in the post-petition period. *See Id.; In re DVI, Inc.*, 308 B.R. 703 (Bankr. D. Del. 2004). *See Matter of Austin Development Company*, 19 F.3d 1077, 1084 (5th Cir. 1994)("[lessor] is entitled to receive rent from the filing of bankruptcy to the date of lease rejection; *In re Southern Motel Associates, Ltd.*, 81 B.R. 112, 117 (Bankr. M.D. Fla. 1987) ("compliance with [Section 365(d)(3)] is mandatory"); *In re Gillis*, 92 B.R. 461, 465 (Bankr. D. Haw. 1988) ("Section 365(d)(3) requires timely payment of full rental obligations until there is a decision to assume or reject the lease."); *In re Homeowner's Outlet Mall Exchange. Inc.*, 89 B.R. 965, 970 (Bankr. S.D. Fla. 1988) (same); *In re Dieckhaus Stationers of King Prussia, Inc.*, 73 B.R. 969, 973 (Bankr. E.D. Pa. 1987) (same); *In re Rare Coin Galleries of America. Inc.*, 72 B.R. 415, 416 (D. Mass. 1987) (same); *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 882-883 (Bankr. E.D.N.Y. 1986) (same); *In re M.H.I. Inc.*, 61 B.R. 69, 71 (Bankr. D. Md. 1986) ("message of Congress is unmistakable" that trustee or debtor must pay full rent until lease is assumed or rejected); *In re Longua*, 58 B.R. 503, 505 (Bankr. W.D. Wis. 1986) (same); *see also*, 130 Cong. Rec. S8994-95 (daily ed. June 29, 1984) (statement of Sen. Hatch)("[Section 365(d)(3)] . . . would lessen the [problem of landlords being forced to provide services without current payment] by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease").

11.    Notwithstanding the clear dictates of 11 U.S.C. § 365(d)(3), the Lessee Debtors have failed to perform obligations arising under the Lease since the Petition Date.  Specifically, the Debtors have failed to pay Minimum and Escalating Rent from and after the Petition Date in the following amounts:

|       |                  |          |
|-------|------------------|----------|
| i.    | August, 2018:    | $20,000  |
| ii.   | September 2018:  | $12,100  |
| iii.  | October 2018:    | $12,100  |
| iv.   | November 2018:   | $20,000  |
| v.    | December 2018:   | $20,000  |

12.    Additionally, the Debtors have failed to pay Additional Rent for real estate taxes in the following amounts:

|       |                  |         |
|-------|------------------|---------|
| i.    | August 2018:     | $1,500  |
| ii.   | September 2018:  | $1,500  |
| iii.  | October 2018:    | $1,500  |
| iv.   | November 2018:   | $1,500  |
| v.    | December 2018:   | $1,500  |

13.    Together the Lessee Debtors have failed to pay rental amounts arising pursuant to the Lease in the amount of $91,700.

14.    The Court should, therefore, enter its Order requiring the Debtor to immediately comply with Section 365(d)(3) and timely and fully pay to Live Well the post-petition Rent due under the Lease.  The amount required to cure the existing violation of Section 365(d)(3) is $91,700.

4832-6389-3379.1

**B.      The Court Should Grant Live Well an Allowed Administrative Expense
Claim Pursuant to 11 U.S.C. § 503(b)(1)(A) with Priority as Provided in 11
U.S.C. § 507(a)(2) for the Unpaid Post-Petition Rent and Require Immediate
Payment of Such Claim.**

15.      Section 503(b)(1)(A) of the Bankruptcy Code allows a party to recover "the
actual, necessary costs and expenses of preserving the estate" as administrative expenses.
Pursuant to Section 503(b)(1)(A), the Court should allow as an administrative expense, claims
for rent accruing under a nonresidential real property lease during a Chapter 11 proceeding.
There is no question, that the payment of rent for the use and occupancy of real estate ordinarily
counts as an "actual, necessary" cost to which a landlord, as a creditor, is entitled, *Zagata
Fabricators, Inc. v. Superior Air Prods*., 893 F.2d 624, 627 (3d Cir. 1990).

16.      In addition, courts have routinely held that the clause set forth in section 365(d)(3)
---'notwithstanding section 503(b)(1)'---obviates the requirement that administrative expense
status be proven." *In re Tobago Bay Trading Co.*, 142 B.R. 528, 533 (Bankr. N.D. Ga. 1991).
(citing *In re Cardinal Industries, Inc*., 109 B.R. 738, 740 (Bankr. S.D. Ohio 1989); s*ee also, In re
Pacific-Atlantic Trading Co.*, 27 F.3rd 401 (9th Cir. 1994) (holding that lessor is entitled to
payment of rental obligations without having to show the proof of value conferred upon the
estate by continued occupation of the premises).   Therefore, Live Well is also entitled to
allowance and payment of an administrative expense claim pursuant to Section 503(b)(1), for the
Monthly Rent that accrued from and after the Petition Date.

17.      The Lessee Debtors have retained possession of the Property throughout this
Chapter 11 proceeding.  As set forth above, the Lessee Debtors have nevertheless failed to fully
pay the Monthly Rent due under the Lease for the post-petition period in the amount of $91,700.

18.      Accordingly, Live Well is entitled to allowance and immediate payment of an
administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A) with priority as provided in

11 U.S.C. § 507(a)(2) for the amount of the post-petition Rent that remains unpaid under the Lease in the amount of $91,700. In the event the Lessee Debtors continue to fail to honor their s obligations under Section 365(d)(3), Live Well is entitled to an additional administrative expense claim for each month hereafter in the amount of at least $21,500.

WHEREFORE, Live Well respectfully requests that the Court enter its Order:

(A)    compelling the Debtor to comply with its obligations under 11 U.S.C. § 365(d)(3) and immediately cure the existing default with respect to the Debtor's failure to timely pay its rental obligations for the post-petition period in the amount of $91,700;

(B)    granting Live Well an allowed administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A) with priority as provided in 11 U.S.C. § 507(a)(2) in the amount of $91,700 for the amount of the rental amount arising under the Lease during the post-petition period and require that such amount be immediately paid; and

(C)    Such other relief as the Court deems just and proper.

Dated this 21st day of December, 2018.

KUTAK ROCK LLP


By    /s/ Jeffrey T. Wegner
     Jeffrey T. Wegner
     Nebraska Bar No. 18265
     1650 Farnam Street
     Omaha, NE  68102
     (402) 346-6000 (Telephone)
     (402) 346-1148 (Facsimile)
     jeffrey.wegner@kutakrock.com

*Counsel for Live Well Enterprises, LLC*

4832-6389-3379.1

EXHIBIT A

[See attached.]

4832-6389-3379.1

## ASSIGNMENT OF LEASE AGREEMENT

This Assignment of Lease Agreement and Consent By Landlord ("Assignment") is made and entered into as of the <u>1</u> day of December, 2016 by and between Eat Fit Go Healthy Foods, LLC, a Nebraska limited liability company ("Assignor") and Eat Fit Go Kitchen Arizona, LLC, a Nebraska limited liability company ("Assignee").

## WITNESSETH:

WHEREAS, Assignor has heretofore entered in to that certain Lease Agreement dated as of August 16, 2016, between Live Well Enterprises, LLC ("Landlord"), a Nebraska limited liability company, and Assignor ("Lease"), whereby Assignor has leased from the Landlord certain premises consisting of a production kitchen and warehouse facilities known as 739 E. Dunlap Avenue, Phoenix, Arizona (the "Premises"); and

WHEREAS, Assignor desires to assign the Lease to Assignee, and Assignee desires to accept such assignment pursuant to the terms set forth below; and

WHEREAS, the parties hereto desire to enter into this Assignment to define the rights, duties and liabilities of the parties hereto.

NOW, THEREFORE, for and in consideration of the mutual covenants herein contained, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1.  <u>Assignment</u>.  Assignor hereby grants, conveys, assigns and transfers to Assignee all of Assignor's right, title and interest in and to the Lease, to have and to hold the same unto Assignee, its successors and assigns, from the date hereof to the end of the term of the Lease.  Assignee hereby accepts such assignment, and agrees to assume all of the obligations of the Assignor under the Lease which have not yet accrued as of the date of this Assignment, but which will accrue prior to termination of the term of the Lease.

2.  <u>Assignor's Representations</u>.  Assignor does hereby represent and warrant to Assignee the following:

    a)   To our knowledge, the Lease is in full force and effect, and has not been modified, amended, revoked, rescinded or repealed.

    b)   Assignor has delivered to Assignee a full, accurate and complete copy of the Lease, with all amendments thereto, if any, all of which are attached hereto as Exhibit A.

    c)   No rent required to be paid under the Lease has been paid more than thirty (30) days in advance of its due date.

3.  <u>Consent of Landlord</u>.  It is understood and agreed that this Assignment shall not take effect until it has been consented to, in writing, by the Landlord, by virtue of its signature hereto in the Consent By Landlord set forth below.

IN WITNESS WHEREOF, Assignor and Assignee have hereto executed this Assignment as of the day and year first above written.

**ASSIGNOR:**

EAT FIT GO HEALTHY FOODS, LLC,

By _____

Name: _____Aaron McKeever_____

Title: _____President_____

**ASSIGNEE:**

EAT FIT GO ARIZONA KITCHEN, LLC,

By _____

Name: _____Aaron McKeever_____

Title: _____President_____

## CONSENT BY LANDLORD

The undersigned, as owner of the Premises described above, and as Landlord under the Lease, in consideration of the above Assignment, does hereby consent to the assignment of the Lease by Assignor to Assignee, and does hereby accept the Assignee as Lessee under the Lease, without, however, releasing Assignor from its obligations thereunder.  This consent is effective as of the date of the Assignment.  Landlord does hereby confirm that the Lease is in full force and effect and has not been modified, amended, revoked, rescinded or repealed, that all rent and other amounts due under the Lease have been fully paid to date (except for the December, 2016 rent which remains unpaid), and that all covenants and obligations on the part of Assignor, as Lessee, which have accrued up to the date hereof have been fully performed.  Landlord further states that it is not in default under the Lease, and to the best of its knowledge and belief, Assignor, as Lessee under the Lease, is not in default under the Lease.

**LANDLORD:**

LIVE WELL ENTERPRISES, LLC

By _____

Name: _____Aaron McKeever_____

Title: _____President_____

**LEASE AGREEMENT**
**BY AND BETWEEN**


Live Well Enterprises, LLC, a Nebraska limited liability company
**("Landlord")**


and


Eat Fit Go Healthy Foods, LLC, a Nebraska limited liability company
**("Tenant")**


**For**


739 E. Dunlap Avenue, Phoenix, Arizona
**Leased Premises**

### Lease Agreement

This Lease Agreement made *August 16*, 2016 between Live Well Enterprises, LLC, a Nebraska limited liability company, having an office at *8877 South 137th Circle*, referred to in this Lease as "Landlord", *Omaha, NE 68138* and

Eat Fit Go Healthy Foods, LLC, a Nebraska limited liability company, having an office at 8877 South 137th Cir., Suite 1, Omaha, NE 68138, referred to in this Lease as "Tenant."

1.   **Leased Premises.** Landlord Leases to Tenant and Tenant hires from Landlord, in accordance with the provisions of this Lease, the land, together with the building and improvements thereon, located at 739 E. Dunlap Avenue, Phoenix, Arizona more particularly described in Schedule A annexed to and made part of this Lease; the land, building and improvements being referred to in this Lease as the "Premises." This Lease is made subject to such facts as an accurate survey may disclose, easements, rights of way and restrictions of record.

2.   **Term.** The term of this Lease shall be for ten (10) years, commencing October 1, 2016 and ending midnight, September 30, 2026.

3.   **Tenant's Use of the Premises.**

(a)   **Use by Tenant and Certificate of Occupancy.** Tenant shall use and occupy the Premises only as and for preparation of pre-packaged meals and related items to be sold through its affiliated retail outlets and other retail customers. In the event required, Tenant shall, at Tenant's own expense, apply for and obtain a Certificate of Occupancy with respect to the Premises, based upon the use set forth above, from the appropriate authority, prior to the commencement date of the Lease.

(b)   **Prohibited Use.** Tenant shall not occupy nor use all or any part of the Premises nor permit or suffer the Premises to be occupied or used for any purpose other than as provided for in this Lease, nor for any unlawful or disreputable purpose, nor for any extra hazardous purpose on account of fire or other casualty.

4.   **Minimum and Sales Rent, Additional Rent and Other Sums to be Paid by Tenant.**

(a)   **Minimum and Escalating Rent.** During the Lease term, Tenant shall pay Landlord monthly rent as follows:

Monthly rent shall initially be $12,000, but shall increase as provided herein. Monthly rent will increase as herein provided from and after the month in which meals shipped from the Premises, on average per day, are greater than 2,999, and likewise it shall increase at each milestone level as provided for in the chart below.

No later than the fifteenth (15th) day of each month, Tenant shall provide to Landlord sales data for the prior month reflecting the average number of meals sold from the Premises on a daily basis during the prior month. The average number of meals sold from the Premises will be calculated by using a fraction, the numerator of which is the total number of meals sold from the Premises in the preceding month, and the denominator of which is the number of work days during the prior month when the Premises was open and producing meals during its normal course of business. The statement referred to in this Section shall be in such form and contain such details as is commercially reasonably to support Tenant's sales reporting to Landlord. The acceptance by Landlord of payments of Monthly rent or reports thereon shall be without prejudice to and in no way shall constitute a waiver of Landlord's right to examine Tenant's books and records of its meals sold. Monthly rent payable to Landlord shall increase (but shall not thereafter decrease) as provided in the following chart upon reaching the milestones indicated below respecting the average number of meals sold (or fraction thereof) above 2,999.

| Monthly Rent | Milestone - Average Number of Meals Sold in a Month |
|---|---|
| $12,000 | $\leq 2,999$ |
| $14,000 | $\geq 3,000$ but $< 4,000$ |
| $16,000 | $\geq 4,000$ but $< 5,000$ |
| $18,000 | $\geq 5,000$ but $< 6,000$ |
| $20,000 | $\geq 6000$ |

As used in this Lease, "meals sold" shall mean the aggregate of (a) all meals, snacks, appetizers, beverages and other individual servings of food or beverages sold by Tenant or anyone else in, at, or from the Premises, whether sold for cash, for check, on credit, or otherwise, without reserve or deduction for any inability or failure to collect therefor, including but not limited to such sales and services (1) where the orders therefor originate at and are accepted by Tenant in the Premises, but delivery or performance thereof is made from or

at any other place, (2) pursuant to mail, telephone, cable computer modem or similar devices or other electronic concepts or other similar orders received or billed at or from the Premises, (3) by means of mechanical or other vending devices, or (4) as a result of transactions originating from any other source and which Tenant in the normal and customary course of its operations would credit or attribute to its business conducted in, at, or from the Premises; and (b) all items or other things of value sold by Tenant from its business conducted in, at, or from the Premises which are not specifically considered to be a meal.

Tenant shall prepare and keep, for a period of not less than five (5) years following the end of each lease year, all books and records, including but not limited to sales tax reports, pertaining to its business and meals sold at the Premises. Such books and records shall be kept in accordance with Tenant's accountants customary and normal recordkeeping and shall be available for Landlord's reasonable inspection during Tenant's normal business hours.

At any time within five (5) years after the end of any calendar year during the term of this Lease, Landlord shall have the right, upon five (5) days written notice to Tenant, to audit Tenant's sales and all records relating thereto, and Tenant shall make all such records available for examination at the Premises during Tenant's normal business hours. If the results of any such audit show that Tenant's statement of meals sold for any month during the term of this Lease has been understated AND as a result Tenant owes rent that has not yet been paid to Landlord, then Tenant shall pay Landlord the reasonable cost of such audit (not to exceed $1,500) in addition to any deficiency payment of rent required, including accrued interest thereon at the rate provided for herein from the due date of such rent to date of payment. A report of the findings of Landlord's accountant shall be binding and conclusive upon both Landlord and Tenant.

(b)    **Additional Rent Based upon Real Estate Taxes.** As additional rent, Tenant shall pay Landlord the annual real estate taxes and assessments assessed and levied against the Premises, on the first (1st) day of each month, in advance, in a sum equal to 1/12th of the annual real estate taxes and assessments due and payable for the then calendar year. If at a time a payment is required the amount of the real estate taxes and assessments for the then calendar year shall not be known, Tenant shall pay Landlord, as additional rent, 1/12th of the real estate taxes and assessments for the preceding calendar year; and upon ascertaining the real estate taxes and assessments for the current calendar year, Tenant shall pay Landlord any difference upon demand, or if Tenant shall be entitled to a credit, Landlord shall credit the excess against the next monthly installment(s) of additional rent falling due. Additional rent based upon real estate taxes and assessments payable for the first and last years of the lease term shall be adjusted and pro rated, so that Landlord shall be responsible for Landlord's pro rated share for the period prior to and subsequent to the lease term and Tenant shall pay Landlord its pro rated share for the lease term. Provided this Lease is not previously cancelled or terminated, and there shall be no Event of Default, or an event that with the giving of notice or the lapse of time, or both, would constitute an Event of Default, then Tenant shall have the right to contest the amount or validity of any real estate tax or assessment assessed and levied against the Premises, or to seek a reduction in the valuation of the building on the Premises assessed for real estate tax purposes, by appropriate proceedings diligently conducted in good faith (the "Tax Appeal"), but only after payment of such taxes and assessments. Except as set forth below, Landlord shall not be required to join in any Tax Appeal. If required by law, Landlord shall, upon written request of Tenant, join in the Tax Appeal or permit the Tax Appeal to be brought in Landlord's name, and Landlord shall reasonably cooperate with Tenant, at the cost and expense of Tenant. Tenant shall pay any increase that may result in real estate taxes or assessments as a consequence of the Tax Appeal, which payment obligations shall survive the expiration or earlier termination of this Lease.

(c)    **Additional Rent Based Upon Assessments for Public Improvements.** As additional rent, upon demand, Tenant shall pay Landlord all assessments for public improvements assessed and levied against the Premises. If any assessment for public improvements shall be payable in installments, Landlord shall pay such assessment in the maximum number of installments permitted by law, and Tenant's obligation to pay additional rent shall be limited to each installment or pro rated share thereof due and payable during the lease term.

(d)    **Additional Rent Based Upon Other Sums.** Tenant shall pay Landlord, as additional rent, all other sums of money on Tenant's part to be paid pursuant to the terms, covenants and conditions of this Lease.

(e)    **Additional Rent Based Upon Reimbursement to Landlord.** If Tenant shall fail to comply with or to perform any of the terms, conditions and covenants of this Lease, Landlord may (but with no obligation to do so) carry out and perform such terms, conditions and covenants, at the expense of Tenant, which expense shall be payable by Tenant, as additional rent, upon the demand of Landlord, together with interest at the rate of 12% percent (the "Default Rate"), which interest shall accrue from the date of Landlord's demand.

(f)    **Additional Rent Based Upon Late Payment.** If Tenant defaults, for more than five (5) days in the payment of any monthly installment of monthly rent, additional rent or any of the sums required of Tenant under the Lease, or if Tenant, within five (5) days after demand from Landlord, fails to reimburse Landlord for any expenses incurred by Landlord pursuant to the Lease, together with interest, then Tenant shall pay Landlord, as additional rent, a late charge of five (5%) percent of the rent or expense.

(g) **Additional Rent Based Upon Landlord's Legal Expenses in Enforcing Lease.** As additional rent, Tenant shall pay Landlord, all reasonable attorneys' fees that may be incurred by Landlord in enforcing Tenant's obligations under this Lease; provided, however, that in the event Landlord commences a suit against Tenant to enforce Tenant's obligations under this Lease, and such suit is tried to conclusion and judgment is entered in favor of Tenant, then in that event Tenant shall not be under any obligation to pay Landlord the attorneys' fees that Landlord may have incurred.

(h) **Additional Rent Based Upon Taxes Based on Rent.** If at any time during the term of this Lease a tax or charge shall be imposed by the State of Arizona or the county or municipality in which the Premises is located, pursuant to any future law, which tax or charge shall be based upon the rent due or paid by Tenant to Landlord, then Tenant shall pay Landlord, as additional rent, such tax or charge. The foregoing shall not require payment by Tenant of any income taxes assessed against Landlord or of any capital levy, franchise, estate, succession, inheritance or transfer tax due from Landlord.

(i) **Net Lease, No Setoff and Application.**

(i) **Net Lease.** It is the intention of the parties that this Lease is a "triple net lease" and Landlord shall receive the monthly rent, sales rent, additional rent and other sums required of Tenant under the Lease, undiminished from all costs, expenses and obligations of every kind relating to the Premises, which shall arise or become due during the Lease term, all of which shall be paid by Tenant.

(ii) **No Setoff.** Tenant shall pay Landlord all monthly rent, sales rent, additional rent and other sums required of Tenant under the Lease, without abatement, deduction or setoff, and irrespective of any claim Tenant may have against Landlord; and this covenant shall be deemed independent of any other terms, conditions or covenants of this Lease.

(iii) **Application.** No payment by Tenant or receipt by Landlord of an amount less than all monthly rent, sales rent, additional rent, or other sums required of Tenant under the Lease, shall be deemed anything other than a payment on account of the earliest monthly rent, sales rent, additional rent, or other sum due from Tenant under the Lease. No endorsements or statements on any check or any letter accompanying any check or payment of monthly rent, additional rent, or other sum due from Tenant under the Lease, shall be deemed an accord and satisfaction of Landlord. Landlord may accept any check for payment from Tenant without prejudice to Landlord's right to recover the balance of monthly rent, additional rent, or other sum due from Tenant under the Lease, or to pursue any other right or remedy provided under this Lease or by Requirements.

(j) **Place of Payment of Rent.** The monthly rent, additional rent and other sums required of Tenant under this Lease, shall be paid by Tenant to Landlord at **8877 South 137ᵃ Cir., Suite 1, Omaha, NE  68138** or to such other place as Landlord may notify Tenant.

5. **Condition, Repair, Replacement and Maintenance of the Premises.**

(a) **Condition of the Premises.** Tenant acknowledges examining the Premises prior to the commencement of the Lease term, that Tenant is fully familiar with the condition of the Premises and that Tenant accepts the Premises "As-Is." Tenant enters into the Lease without any representations or warranties on the part of Landlord, express or implied, as to the condition of the Premises, including, but not limited to, the cost of operations and the condition of its fixtures, improvements and systems.

(b) **Tenant's Obligations.**

(i) **Tenant's Maintenance.** Tenant shall, at Tenant's own expense, maintain, keep in good condition, repair and make replacements, foreseen and unforeseen, ordinary and extraordinary, structural and non-structural, to the exterior of the building on the Premises (including, but not limited to, the roof, roof system, windows and doors) and interior of the building on the Premises (including, but not limited to, the plumbing system, the sprinkler system, if any, the heating system, the air conditioning system, if any, the electric system and any other system of the building on the Premises), and the driveways, parking areas, shrubbery and lawn, on the Premises, and at the expiration or other sooner termination of the Lease term, deliver them up in good order and condition and broom clean. Notwithstanding the foregoing, Tenant's replacement obligations shall be capped at $2,000 per calendar year, excepting in the event of replacements which arise out of Tenant's failure to maintain, or Tenant's gross negligence, in which event there shall be no cap.  There shall be no cap on Tenant's maintenance and repair obligations.

(ii) **Damage Caused by Tenant.** Notwithstanding any contrary provisions set forth in this Lease, any damage to the Premises, including, but not limited to, the building or its systems, or the improvements, caused by Tenant or a "Tenant Representative" (as defined below), shall be promptly repaired or replaced to its former condition by Tenant, as required by Landlord, at Tenant's own expense. The term "Tenant Representative" shall mean any shareholder, officer, director, member, partner, employee, agent, licensee, assignee, sublessee or invitee of Tenant, or any third party other than Landlord.

{00037466.DOC}

(iii)    **Tenant to Keep Premises Clean.** In addition to the foregoing, and not in limitation of it, Tenant shall also, at Tenant's own expense, undertake all replacement of all plate glass and light bulbs, florescent tubes and ballasts, and decorating, redecorating and cleaning of the interior of the Premises, and shall keep and maintain the Premises in a clean condition, free from debris, trash, refuse, snow and ice.

(iv)    **Tenant's Negative Covenants.** Tenant shall not injure, deface, permit waste nor otherwise harm any part of the Premises, permit any nuisance at the Premises, permit the emission of any objectionable noise or odor from the Premises, place a load on the floor on the Premises exceeding the floor load per square foot the floor was designed to carry, or install, operate or maintain any electrical equipment in the Premises that shall not bear an underwriters approval.

(v)    **Maintenance/Service Contract.** Tenant shall, at Tenant's own expense, enter into a maintenance/service contract with a maintenance contractor, which shall provide for regularly scheduled servicing of all hot water, heating, ventilation and air conditioning systems and equipment in the Premises. The maintenance contractor and the maintenance/service contract shall be subject to the approval of Landlord, which approval shall not be unreasonably withheld. The maintenance/service contract shall include, without limitation, all servicing suggested by the manufacturer, within the operations/maintenance manual pertaining to such system and/or equipment, and shall be effective (and a copy thereof delivered to Landlord) no later than thirty (30) days after the commencement date of this Lease.

6.    **Insurance.**

(a)    **Insurance Coverage.** Tenant shall, during the lease term, at Tenant's own expense, obtain and keep in force, the following insurance:

(i)    **Fire Insurance.** An All-Risk Insurance policy covering the Premises and all improvements located therein in an amount of one hundred (100%) percent of the replacement value of the building and all improvements on the Premises other than foundations, and with such deductible as Landlord considers appropriate in Landlord's sole discretion. This insurance shall (A) name only Landlord and Landlord's mortgagees, if any, as their respective interests may appear; (B) provide that no act of Tenant shall impede the right of Landlord or Landlord's mortgagees, if any, to receive and collect the insurance proceeds; and (C) provide that the right of Landlord and Landlord's mortgagees, if any, to the insurance proceeds shall not be diminished because of any insurance carried by Tenant for Tenant's own account. Tenant acknowledges that it has no right to receive any proceeds from such insurance policy. Landlord shall not have to carry insurance of any kind on the Premises or on Tenant's furniture or furnishings, or on any of Tenant's fixtures, equipment, improvements, or appurtenances under this Lease; and Landlord shall not be obligated to repair any damage thereto or replace the same.

(ii)    **Sprinkler Insurance.** If sprinklers are installed in the Premises, Tenant shall obtain sprinkler leakage insurance in an amount equal to at least ten percent (10%) of the amount of insurance required to be carried by Tenant pursuant to subparagraph (i) above. This insurance may be included as a part of the All-Risk Insurance policy. This insurance shall (A) name only Landlord and Landlord's mortgagees, if any, as their respective interests may appear; (B) provide that no act of Tenant shall impede the right of Landlord or Landlord's mortgagees, if any, to receive and collect the insurance proceeds; and (C) provide that the right of Landlord and Landlord's mortgagees, if any, to the insurance proceeds shall not be diminished because of any insurance carried by Tenant for Tenant's own account.

(iii)    **Liability Insurance.** Comprehensive general liability insurance coverage (either primary and/or umbrella policies), which shall include personal injury, bodily injury, broad form property damage, operations hazard, owner's protective coverage, contractual liability and products and completed operations liability, in limits not less than three million ($3,000,000.00) Dollars inclusive. This insurance shall insure Landlord and "Landlord's Indemnitees" (as defined below) and Tenant, and such other parties as Landlord may designate, naming each as the insured. Notwithstanding any contrary provisions contained in this paragraph, if any liability insurance policy excludes coverage of any claim made by one insured against another, or any action or suit filed by one insured against another, then Tenant shall deliver to Landlord a separate liability insurance policy, which insures only Landlord and Landlord's Indemnitees and such other parties as Landlord may designate, in accordance with the provisions of this paragraph, and a certificate of insurance evidencing a separate liability insurance policy insuring Tenant in accordance with the provisions of this paragraph. The term "Landlord's Indemnitees" shall mean Landlord's affiliates, mortgagees, if any, and their respective officers, shareholders, directors, employees, agents and representatives, as well as the officers, shareholders, directors, employees and representatives of Landlord.

(iv)    **Worker's Compensation and Employer's Liability Insurance.** Worker's Compensation and Employer's Liability insurance, in a form and in an amount as required to comply with state law and which shall contain a waiver of subrogation against Landlord.

(v) **Additional Insurance.** Any other form or forms of insurance as Landlord or Landlord's mortgagees may reasonably require from time to time, in form and amounts, and for insurance risks against which a prudent tenant of a comparable size and in a comparable business would protect itself.

(b) **Insurance Requirements Generally.** All policies shall be taken out with insurers that are acceptable to Landlord and in form satisfactory to Landlord. Tenant agrees that certificates of insurance, or, if required by Landlord or the mortgagees of Landlord, certified copies of each such insurance policy, will be delivered to Landlord as soon as practicable after the placing of the required insurance. Tenant shall, contemporaneously with the execution of this Lease, provide Landlord with a certificate of insurance as written evidence of the insurance in force, and renewals thereof shall be delivered to Landlord at least thirty (30) days prior to the expiration of the respective policy terms. All policies shall contain an undertaking by the insurers to notify Landlord and the mortgagees of Landlord in writing not less than thirty (30) days before any material change, reduction in coverage, cancellation, or other termination thereof.

(c) **Waiver of Subrogation.** To the extent that the parties may legally so agree, neither Landlord nor Tenant shall be liable by way of subrogation or otherwise to the other party, or to any insurance company insuring the other party for any loss or damage to any of the property of Landlord or Tenant, as the case may be, which loss or damage is covered by any insurance policies carried by the parties and in force at the time of any such damage, even though such loss or damage might have been occasioned by the negligence of Landlord or Tenant, and the party hereto sustaining such loss or damage so protected by insurance waives its rights, if any, of recovery against the other party hereto to the extent and amount that such loss is covered by such insurance. This release shall be in effect only so long as the applicable insurance policies shall contain a clause or endorsement to the effect that the aforementioned waiver shall not affect the right of the insured to recover under such policies; Tenant shall use its best efforts (including payment of any additional premium) to have its insurance policies contain the standard waiver of subrogation clause. In the event Tenant's insurance carrier declines to include in such carrier's policy the standard waiver of subrogation clause, Tenant shall promptly notify Landlord in writing.

7. **Compliance with Laws and Insurance Requirements.**

(a) **General Compliance with Laws.** Tenant shall, at Tenant's own expense, comply with all applicable federal, State of Arizona, county and municipal statutes, ordinances, codes, rules, regulations and requirements (the "Requirements"), which are applicable only by reason of Tenant's use of and operations at the Premises, provided that compliance with such Requirements shall not obligate Tenant to undertake any structural changes or improvements to the Premises. In all other respects, Landlord shall, at Landlord's own expense, promptly comply with all Requirements applicable to the Premises, regardless of whether compliance necessitates structural changes or improvements. Tenant shall have the right to contest, by appropriate legal proceedings, in the name of Tenant or Landlord, the validity or applicability of any Requirement, and Landlord shall, at no cost to Tenant, cooperate with Tenant in connection with such contest, including, without limitation, signing such affidavits and certifications as may be requested by Tenant and giving testimony at depositions, hearings or trials with respect to such contest. Prior to the commencement of this Lease, Landlord shall, at Landlord's own expense, obtain and deliver to Tenant a certificate of occupancy for the Premises.

(b) **Environmental Law.**

(i) **Transaction Triggered Environmental Law.** Tenant shall, at Tenant's own expense, comply with any transaction-triggered environmental law (including, without limitation, a law whose applicability is triggered by a sale of the Premises, a cessation of operations at the Premises, a corporate reorganization, or other commercial transaction), the regulations promulgated thereunder and any amending and successor legislation and regulations, now or hereafter existing in the State (the "Cleanup Law"), to the extent, and only to the extent, that the applicability of the Cleanup Law shall be triggered by an action or omission of Tenant. In all other respects, Landlord shall, at Landlord's own expense, comply with the Cleanup Law. The party responsible for compliance shall, at such party's expense, make all submissions to, provide all information to and comply with all requirements of, the applicable state environmental protection or conservation agency enforcing the Cleanup Law. Notwithstanding anything to the contrary, in no event shall Tenant have any obligation to undertake any environmental investigation or remediation of any Contaminants, unless such Contaminants were Discharged by Tenant.

(ii) **Information to Tenant.** At no expense to Tenant, Landlord shall promptly provide all information requested by Tenant or any Governmental Authority with respect to Tenant fulfilling Tenant's obligations under this paragraph, and shall promptly sign such affidavits, submissions, and other documents requested by Tenant or any Governmental Authority, including, without limitation, a declaration of environmental restrictions or other institutional control notice as may be necessary in connection with Tenant's compliance with Tenant's obligations under this paragraph 7.

(iii) **Burden of Proof.** In the event of a dispute between Landlord and Tenant with respect to liability for a Discharge of Contaminants, Tenant shall have the burden to prove, that the Contaminants were not Discharged by Tenant, and, failing to carry such burden, Tenant shall be responsible, at Tenant's own expense, to assess, investigate, sample and remediate such Contaminants,

{00037466.DOC}

pay all filing fees, post any security required for such environmental compliance and take all other action required with respect to such Contaminants and environmental compliance.

      (iv)    **Notice of Meetings**. Tenant shall be notified of all meetings by Landlord or Landlord's representatives, with any Governmental Authority and shall have the right to attend and participate in all such meetings.

      (v)    **Environmental Documents**. Landlord shall deliver to Tenant all Environmental Documents that pertain to environmental compliance or the recovery or attempted recovery from an insurance carrier, or both, and to the extent applicable, shall submit such Environmental Documents to Tenant prior to submission to any Governmental Authority, for Tenant's review and comment.

      (vi)    **Indemnification by Landlord**. Landlord shall indemnify, defend and hold Tenant harmless from and against any and all claims, liabilities, losses, damages, penalties and costs, including, without limitation, counsel, engineering and other professional or expert fees that Tenant may incur, resulting directly or indirectly, wholly or partly, from: (A) a Discharge of Contaminants at the Premises as a result of the actions or omissions of Landlord or any third party other than Tenant; or (B) a breach by Landlord of Landlord's obligations under this paragraph.

      (vii)    **Indemnification by Tenant**. Tenant shall indemnify, defend and hold Landlord harmless from and against any and all claims, liabilities, losses, damages, penalties and costs, including, without limitation, counsel, engineering and other professional or expert fees that Landlord may incur, resulting directly or indirectly, wholly or partly, from: (A) a Discharge of Contaminants at the Premises as a result of the actions or omissions of Tenant; or (B) a breach by Tenant of Tenant's obligations under this paragraph.

      (viii)    **Interpretation and Definitions**.

      (A)    **Interpretation**. The obligations imposed upon Landlord and Tenant under this subparagraph (b) are in addition to, and are not intended to limit, but to expand upon, the obligations imposed upon Landlord and Tenant under subparagraph (a).

      (B)    **Contaminants**. The term "Contaminants" shall include, without limitation, any regulated substance, toxic substance, hazardous substance, hazardous waste, pollution, pollutant or contaminant, as defined or referred to in the Resource Conservation and Recovery Act, as amended, 42 U.S.C. §6901 *et seq.*; the Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. §9601 *et seq.*; the Water Pollution and Control Act, 33 U.S.C. §1251 *et seq.*; analogous state laws; together with any amendments thereto, regulations promulgated thereunder and all substitutions thereof, as well as words of similar purport or meaning referred to in any other federal, State of Arizona, county or municipal environmental statute, ordinance, code, rule, regulation, order, directive or requirement, including, without limitation, radon, asbestos, polychlorinated biphenyls, urea formaldehyde and petroleum products and petroleum based derivatives. Where a statute, ordinance, code, rule, regulation, order, directive or requirement defines any of these terms more broadly than another, the broader definition shall apply.

      (C)    **Discharge**. The term "Discharge" shall mean the releasing, spilling, leaking, leaching, disposing, pumping, pouring, emitting, emptying or dumping of Contaminants at, into, onto or migrating from or onto the Premises, regardless of whether the result of an intentional or unintentional action or omission.

      (D)    **Governmental Authority/governmental Authorities**. The term "Governmental Authority" or "Governmental Authorities" shall mean the federal, State of Arizona, county or municipal government, or any department, agency, bureau or other similar type body obtaining authority therefrom, or created pursuant to any Requirements.

      (c)  **Survival**. This paragraph 7 shall survive the expiration or earlier termination of this lease. Landlord's failure to abide by the terms of this paragraph shall be restrainable, or enforceable, as the case may be, by injunction.

    8.    **Alterations, Additions and Improvements**. Except for non-structural changes costing twenty thousand ($20,000.00) Dollars, or less, Tenant shall not make any alterations, additions or improvements to the building and improvements on the Premises without the prior written consent of Landlord, which consent shall not be unreasonably withheld, except for unattached movable fixtures that may be installed without drilling, cutting or otherwise defacing, damaging or overloading the Premises, which may be made by Tenant without the consent of Landlord. All alterations, additions or improvements erected by Tenant shall be and remain the property of Tenant during the term of this Lease and Tenant shall remove all alterations, additions or improvements erected by Tenant and restore the Premises to its original condition, reasonable wear and tear excepted, by the date of termination of this Lease.

    9.    **Fire and Other Casualty Affecting the Premises**.

(a)    **Notice of Casualty by Tenant.** If the improvements situated upon the Premises shall be damaged or destroyed by any peril, including, but not limited to, fire, wind storm or other casualty (each such occurrence, a "Casualty"), at any time, whether covered by insurance to be provided by Tenant under this Lease, or not, Tenant shall give prompt notice thereof to Landlord and this Lease shall continue in full force and effect.

(b)    **Restoration by Tenant.** If at any time any Casualty occurs, Tenant shall proceed in good faith and with due diligence to restore, replace, rebuild and repair the improvements damaged or destroyed by such Casualty to substantially the same condition such improvements were in immediately prior to such damage or destruction, and Tenant's obligations to pay the monthly rent, additional rent and other sums required of Tenant under the Lease shall not be abated or reduced, nor shall Tenant be entitled to surrender possession of the Premises by reason thereof. Notwithstanding anything to the contrary set forth in this Lease, the net insurance proceeds, if any, collected by Landlord from any insurance policy, and not otherwise payable to a mortgagee of Landlord, after deducting all costs of collection (including, but not limited to, the fees of any adjuster employed by Landlord with respect to the collection of any insurance proceeds), (the "Restoration Funds"), shall be available to be used by Tenant for the restoration of the Premises. If the Restoration Fund is Two Hundred Thousand ($200,000) Dollars or less, the whole thereof shall be paid to Tenant and deposited in trust in a segregated interest bearing account by Tenant, in a financial institution designated by Landlord. If the Restoration Fund is in excess of Two Hundred Thousand ($200,000) Dollars, the Restoration Fund shall continue to be held by Landlord, and provided Tenant complies with the provisions of this paragraph, the Restoration Fund shall be made available to Tenant, from time to time, in the manner and to the extent hereinafter provided, to pay for the costs of the restoration of the Premises; provided, however, that Landlord, before paying such monies over to Tenant, shall be entitled to reimburse itself from the Restoration Fund to the extent, if any, of the expenses paid or incurred by Landlord in the administration of the Restoration Fund nd oversight of the restoration, including, without limitation, fees for consultants, counsel and engineers. Any funds left after the completion of and payment for all restoration of the Premises shall be retained by Landlord.

(i)    **Requisitions for Payment.** The Restoration Fund shall be paid to Tenant, from time to time, in installments as the restoration work progresses, upon requisitions to be submitted by Tenant to Landlord showing the cost of labor and materials incorporated in the restoration, or incorporated therein since the last previous requisition. If any vendors, mechanics, laborers, or materialman's lien is filed against the Premises, Tenant shall not be entitled to receive any further installment until such lien is satisfied or otherwise discharged.

(ii)    **Amount of Payment.** The amount of any installment to be paid to Tenant shall be such proportion of the total Restoration Fund received as the cost of labor and materials theretofore incorporated by Tenant in the restoration bears to the total estimated cost of the restoration by Tenant, less (A) all payments theretofore made to Tenant out of the Restoration Fund and (B) ten (10%) percent of the amount so determined.

(iii)    **Deficiency and Completion.** In the event the Restoration Fund is insufficient for the purpose of paying for the restoration, or to the extent any mortgagee shall not permit the insurance proceeds to be used for restoration, Tenant shall nevertheless be required to make the restoration and pay any additional sums required for the restoration. The restoration shall be deemed complete when the restoration has been completed substantially in accordance with the plans and specifications therefore, as determined by a joint inspection by Landlord and Tenant, and a certificate of occupancy has been issued, allowing the improvements to be used and operated for their intended purpose.

(iv)    **Conditions to Payment.** In addition to the foregoing, in no event shall any Restoration Funds be paid until there has been submitted to Landlord:

(A)    **Architect or Contractor Certificate.** A certificate of Tenant's architect or Tenant's contractor stating that the sum then requested to be withdrawn either has been paid by Tenant or is justly due to contractors, subcontractors, materialmen, engineers, architects who have rendered or furnished certain services and materials for the work and giving a brief description of such services and materials and the principal subdivisions or categories thereof and the several amounts so paid or due to each of said persons in respect thereof, and stating in reasonable detail the progress of the work up to the date of said certificate; the sum then requested does not exceed the value of the services and materials described in the certificate; and the balance of the Restoration Funds held by Landlord shall be sufficient upon completion of the restoration to pay for the same in full, and stating in reasonable detail the estimate of the cost of such completion;

(B)    **Title.** There shall be furnished to Landlord an official search, or a certificate of title insurance company reasonably satisfactory to Landlord, or other evidence reasonably satisfactory to Landlord, showing that there has not been filed any vendor's, mechanic's, laborer's or materialman's statutory or other similar lien affecting the Premises, which has not been discharged of record, except as shall be discharged upon payment of the amount then requested to be withdrawn;

{00037466.DOC}

(C) **No Event of Default.** At the time of making such payment, there shall not have been an Event of Default, or an event that with the passage of time or the giving of notice, or both, shall constitute an Event of Default;

(D) **Final Payment.** With respect only to the final payment, at the time of making such payment, Tenant shall have substantially completed the restoration as evidenced by a certificate of occupancy or completion, issued by the appropriate Governmental Authority.

(c) **Failure by Tenant to Commence Restoration.** If Tenant shall fail to commence the necessary repairs, replacements or reconstruction required for the restoration of the Premises within forty-five (45) days after receipt by Landlord or Tenant, as the case may be, of the Restoration Funds, or any part thereof, or if Tenant shall have commenced restoration, but shall fail to continue restoration with reasonable diligence, then unless such delay shall have been due to causes beyond the reasonable control of Tenant, Landlord shall have the right, at Landlord's option, following thirty (30) days prior notice to Tenant, to deem such an event as an Event of Default, and in addition to all other rights provided to Landlord under this Lease and by Requirements, Tenant shall promptly pay over to Landlord all Restoration Funds held by Tenant.

10. **Assignment and Subletting.** Tenant shall have the right to assign this Lease or further sublet all or any part of the Premises, subject to the consent of Landlord, which shall not be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing, Landlord shall be deemed to have unreasonably withheld its consent if the proposed assignee operates substantially the same business as Tenant and has a net worth equal to or greater than Tenant. Tenant shall have the right to assign the Lease and sublet the Premises to any affiliate of Tenant, successor by merger or consolidation, or acquirer of substantially all of the assets of Tenant (the foregoing hereinafter known as an "Affiliate"), without the consent of Landlord. Tenant shall, however, give notice to Landlord of an assignment or subletting to an Affiliate at least ten (10) days prior to the effective date of such assignment or subletting. In the event Landlord consents to an assignment, then Tenant shall be released from this Lease.

11. **Landlord's Right to Inspect and Repair.** Landlord or Landlord's agents, employees or representatives, shall have the right to enter into and upon all or any part of the Premises during the Lease term at all reasonable hours, for the purpose of: (a) examination; (b) determination whether Tenant is in compliance with its obligations under this Lease; or (c) making repairs, alterations, additions or improvements to the Premises, as may be necessary by reason of Tenant's failure to make same after notice to Tenant to do so, except in an emergency. This paragraph shall not be deemed nor construed to create an obligation on the part of Landlord to make any inspection of the Premises or to make any repairs, alterations, additions or improvements to the Premises for its safety or preservation.

12. **Landlord's Right to Exhibit Premises.** Landlord or Landlord's agents, employees or representatives shall have the right to show the Premises during the Lease term to persons wishing to purchase or grant fee mortgages on the Premises. Landlord or Landlord's agents, employees or other representatives shall have the right within the last six (6) months of the Lease term to place notices on any parts of the Premises, offering the Premises for lease and at any time during the Lease term, offering the Premises for sale, and Tenant shall permit the signs to remain without hindrance or molestation.

13. **Signs.** Tenant shall not cause any signs to be placed at the Premises, except of a design and structure and at such places as Landlord shall consent to in writing prior to the installation. If Landlord or Landlord's agents, employees or other representatives wish to remove any such signs in order to make any repairs, alterations, additions or improvements to the Premises, such signs may be removed, but shall be replaced, at Tenant's expense, when the repairs, additions, alterations or improvements shall be completed; however, such provision shall not create an obligation on the part of Landlord to make any repairs, alterations, additions or improvements to the Premises. All signs of Tenant at the Premises shall conform with all municipal ordinances or other laws and regulations applicable to such signs.

14. **Landlord not Liable.** Landlord shall not be liable for any damage or injury to any person or any property as a consequence of the failure, breakage, leakage or obstruction of water, well, plumbing, septic tank, sewer, waste or soil pipes, roof, drains, leaders, gutters, down spouts or the like, or of the electrical system, gas system, air conditioning system or other system, or by reason of the elements, or resulting from any act or failure to act on the part of Landlord, or Landlord's agents, employees, invitees or representatives, assignees or successors, or attributable to any interference with, interruption of or failure beyond the control of Landlord.

15. **Force Majeure.** Whenever a period of time is herein prescribed for the taking of any action by Landlord, Landlord shall not be liable or responsible for, and there shall be excluded from the computation of such period of time, any delays due to strikes, lockouts, riots, acts of God, shortages of labor or materials, war, civil commotion, fire or other casualty, catastrophic weather conditions, a court order that causes a delay, governmental laws, regulations, or restrictions, or any other cause whatsoever beyond the control of Landlord (any of the foregoing being referred to an "Unavoidable Delay"). Landlord shall use reasonable efforts to notify Tenant not later than ten (10) business days after Landlord knows of the occurrence of an Unavoidable Delay; provided, however, that Landlord's failure to notify Tenant of the occurrence of an event constituting an Unavoidable Delay shall not alter, detract from, or negate its character as an Unavoidable Delay or otherwise result in the loss of any benefit or right granted to Landlord under this Lease.

{00037466.DOC}

16. **Indemnification and Waiver of Liability.** Neither Landlord nor Landlord's Indemnitees shall be liable for and Tenant shall indemnify and save harmless Landlord and Landlord's Indemnitees from and against any and all liabilities, damages, claims, suits, costs (including costs of suit, attorneys' fees and costs of investigation) and actions of any kind, foreseen or unforeseen, arising or alleged to arise by reason of injury to or death of any person or damage to or loss of property, occurring on, in, or about the Premises, or by reason of any other claim whatsoever of any person or party, occasioned, directly or indirectly, wholly or partly: (a) by any act or omission on the part of Tenant or any Tenant Representative; (b) by any breach, violation or non-performance of any covenant of Tenant under this Lease; or (c) by a Discharge of Contaminants during the Lease term; regardless of whether such liability, claim, suit, cost, injury, death or damage arises from or is attributable to the concurrent negligence, willful misconduct or gross negligence of Landlord or any Landlord Indemnitee. If any action or proceeding shall be brought by or against Landlord or any Landlord Indemnitee in connection with any such liability, claim, suit, cost, injury, death or damage, Tenant, on notice from Landlord or any Landlord Indemnitee, shall defend such action or proceeding, at Tenant's expense, by or through attorneys reasonably satisfactory to Landlord or the Landlord Indemnitee. The provisions of this paragraph shall apply to all activities of Tenant or any Tenant Representative with respect to the Premises, whether occurring before or after execution of this Lease. Tenant's obligations under this paragraph shall not be limited to the coverage of insurance maintained or required to be maintained by Tenant under this Lease. Neither Landlord nor any Landlord Indemnitee shall be liable in any manner to Tenant or any Tenant Representative for any injury to or death of persons or for any loss of or damage to property, regardless of whether such loss or damage is occasioned by casualty, theft or any other cause of whatsoever nature, including loss or damage caused solely by the negligent, willful misconduct or gross negligence of Landlord or any Landlord Indemnitee. In no event shall Landlord or any Landlord Indemnitee be liable in any manner to Tenant or any Tenant Representative as the result of the acts or omissions of Tenant or a Tenant Representative and all liability therefore shall rest with Tenant. All personal property upon the Premises shall be at the risk of Tenant only, and neither Landlord nor any Landlord Indemnitee shall be liable for any damage thereto or theft thereof, whether or not due in whole or in part to the negligence, willful misconduct or gross negligence of Landlord or any Landlord Indemnitee.

17. **Subordination; Attornment.**

(a) **Subordination.** This Lease shall be subject and subordinate to any mortgage, deed of trust, trust indenture, assignment of leases or rents or both, or other instrument evidencing a security interest, which may now or hereafter affect any portion of the Premises, or be created as security for the repayment of any loan or any advance made pursuant to such an instrument or in connection with any sale-leaseback or other form of financing transaction and all renewals, extensions, supplements, consolidations, and other amendments, modifications, and replacements of any of the foregoing instruments ("Mortgage"), and to any ground lease or underlying lease of the Premises or any portion of the Premises whether presently or hereafter existing and all renewals, extensions, supplements, amendments, modifications, and replacements of any of such leases ("Superior Lease"). Tenant shall, at the request of any successor-in-interest to Landlord claiming by, through, or under any Mortgage or Superior Lease, attorn to such person or entity as described below. The foregoing provisions of this subparagraph (a) shall be self-operative and no further instrument of subordination shall be required to make the interest of any lessor under a Superior Lease (a "Superior Lessor") or any mortgagee, trustee or other holder of or beneficiary under a Mortgage (a "Mortgagee") superior to the interest of Tenant hereunder; provided, however, Tenant shall execute and deliver promptly any certificate or instrument, in recordable form, that Landlord, any Superior Lessor or Mortgagee may request in confirmation of such subordination.

(b) **Rights of Superior Lessor or Mortgagee.** Any Superior Lessor or Mortgagee may elect that this Lease shall have priority over the Superior Lease or Mortgage that it holds and, upon notification to Tenant by such Superior Lessor or Mortgagee, this Lease shall be deemed to have priority over such Superior Lease or Mortgage, whether this Lease is dated prior to or subsequent to the date of such Superior Lease or Mortgage. If, in connection with the financing of the Premises or with respect to any Superior Lease, any Mortgagee or Superior Lessor shall request reasonable modifications of this Lease that do not increase the monetary obligations of Tenant under this Lease, materially increase Tenant's other obligations, or materially and adversely affect the rights of Tenant under this Lease, then Tenant shall make such modifications.

(c) **Attornment.** If at any time prior to the expiration of the term of this Lease, any Superior Lease shall terminate or be terminated by reason of a default by Landlord as tenant thereunder or any Mortgagee comes into possession of the Premises or the estate created by any Superior Lease by receiver or otherwise, Tenant shall, at the election and upon the demand of any owner of the Premises, or of the Superior Lessor, or of any Mortgagee-in-possession of the Premises, attorn, from time to time, to any such owner, Superior Lessor or Mortgagee, or any person or entity acquiring the interest of Landlord as a result of any such termination, or as a result of a foreclosure of the Mortgage or the granting of a deed in lieu of foreclosure, upon the then-executory terms and conditions of this Lease, for the remainder of the term. In addition, in no event shall any such owner, Superior Lessor or Mortgagee, or any person or entity acquiring the interest of Landlord be bound by (i) any payment of rent or additional rent for more than one (1) month in advance, or (ii) any security deposit or the like not actually received by such successor, or (iii) any amendment or modification in this Lease made without the consent of the applicable Superior Lessor or Mortgagee, or (iv) any construction obligation, free rent, or other concession or monetary allowance, or (v)

any set-off, counterclaim, or the like otherwise available against any prior landlord (including Landlord), or (vi) any act or omission of any prior landlord (including Landlord).

      (d) **Rights Accruing Automatically.** The provisions of this paragraph 17 shall inure to the benefit of any such successor-in-interest to Landlord, shall apply notwithstanding that, as a matter of law, this Lease may terminate upon the termination of any such Superior Lease, and shall be self-operative upon any such demand, and no further instrument shall be required to give effect to such provisions. Tenant, however, upon demand of any such successor-in-interest to Landlord, shall execute, from time to time, instruments in confirmation of the foregoing provisions of this paragraph, reasonably satisfactory to any such successor-in-interest to Landlord, acknowledging such attornment and setting forth the terms and conditions of its tenancy.

      (e) **Limitation on Rights of Tenant.** As long as any Superior Lease or Mortgage shall exist, Tenant shall not seek to terminate this Lease by reason of any act or omission of Landlord until Tenant shall have given written notice of such act or omission to all Superior Lessors and Mortgagees at such addresses as shall have been furnished to Tenant by such Superior Lessors and Mortgagees and, if any such Superior Lessor or Mortgagee, as the case may be, shall have notified Tenant within ten (10) business days following receipt of such notice of its intention to remedy such act or omission, until a reasonable period of time shall have elapsed following the giving of such notice (but not to exceed sixty (60) days), during which period such Superior Lessors and Mortgagees shall have the right, but not the obligation, to remedy such act or omission. The foregoing shall not, however, be deemed to impose upon Landlord any obligations not otherwise expressly set forth in this Lease.

    18. **Condemnation.**

      (a) **Total Taking.** If a portion of the Premises is taken so that ingress to and egress from the Premises is materially reduced, or the whole or any substantial portion of the Premises is taken for any public or quasi-public use under governmental law, ordinance or regulation, or by right of eminent domain, or by private purchase in lieu thereof, this Lease shall terminate and the rent shall be abated during the unexpired portion of this Lease, effective when the physical taking of the Premises shall occur.

      (b) **Partial Taking.** If less than a substantial part of the Premises is taken, or a portion of the Premises is taken so that ingress to and egress from the Premises is materially reduced, for any public or quasi- public use under any governmental law, ordinance or regulation, or by right of eminent domain, or by private purchase in lieu thereof, and in Tenant's reasonable opinion the Premises are still suitable for Tenant's business purposes, the Lease term shall not terminate, but the monthly rent and additional rent payable hereunder during the unexpired portion of the Lease term shall be reduced to such extent as may be fair and reasonable under all of the circumstances.

      (c) **Right to Proceeds.** In the event of any such taking or private purchase in lieu thereof, Landlord and Tenant shall each be entitled to receive and retain such separate awards and/or portion of lump sum awards as may be allocated to their respective interests in any condemnation proceeding, and, in addition, Tenant shall be entitled to the unamortized value of any fixtures and leasehold improvements not capable of removal.

    19. **Bankruptcy or Insolvency of Tenant.**

      (a) **Landlord's Right to Terminate Lease.** If Tenant is the subject of an Order for Relief under the existing or any future Federal Bankruptcy Code or law, as amended or modified ("the Bankruptcy Code"), or if Tenant files a petition or if a petition is filed against Tenant, under the Bankruptcy Code, then, in addition to any such event constituting an Event of Default under this Lease, and Landlord having all rights as a result thereof, Landlord shall have the option to either re-enter and re-possess the Premises pursuant to the provisions of the Lease or to terminate the Lease, pursuant to the provisions of the Lease, or both.

      (b) **Tenant's Filing of Chapter 7 Proceedings.** If a petition is filed by, or an order for relief is entered against, Tenant under Chapter 7 of the Bankruptcy Code, and the Trustee of Tenant ("the Trustee") elects to assume the Lease for the purpose of assigning it, the election or assignment, or both, may be made only if all of the provisions of subparagraphs (c) and (e) below are satisfied. Nothing in the preceding sentence shall be deemed to grant the Trustee any right to assume the Lease if it has been terminated theretofore. If the Trustee fails to elect to assume the Lease for the purpose of assigning it within sixty (60) days after the Trustee's appointment, the Lease shall be deemed to have been rejected by the Trustee. Landlord shall then immediately become entitled to possession of the Premises, without any further obligation to Tenant or the Trustee, and the Lease shall automatically terminate at the end of the sixty (60) day period, but Landlordës right to compensation for damages in the bankruptcy proceedings shall survive. In such case, Landlord shall be entitled to recover from Tenant, as damages, an amount equal to the monthly rent and additional rent reserved under the Lease from the date of the automatic termination to the expiration date of the Lease, and the damages shall be due and payable to Landlord immediately.

      (c) **Tenant's Filing of Chapter 11 or 13 Proceedings.** If Tenant files a petition for reorganization under Chapters 11 or 13 of the Bankruptcy Code, or a proceeding that is filed by or against Tenant under any other chapter of the Bankruptcy Code is converted to a Chapter 11 or 13 proceeding and the Trustee or Tenant as a debtor-in-possession ("Debtor-in-Possession") fails to assume the Lease

within sixty (60) days from the date of filing the petition or the conversion, the Trustee or the Debtor-in-Possession shall be deemed to have rejected the Lease and the Lease shall automatically terminate at the expiration of the sixty (60) day period, but Landlord's right to compensation for damages in the bankruptcy proceedings shall survive. Nothing in the preceding sentence shall be deemed to grant the Trustee or the Debtor-in- Possession any right to assume the Lease if it has been terminated theretofore. In such a case, Landlord shall be entitled to recover from Tenant, as damages, an amount equal to the monthly rent and additional rent reserved under the Lease from the date of the automatic termination to the expiration date of the Lease, and the damages shall be due and payable to Landlord immediately. In order to assume the Lease, the Trustee or the Debtor-in-Possession shall notify Landlord of the election to assume within the sixty (60) day period, but in such event all of the following conditions, which Landlord and Tenant acknowledge are commercially reasonable, must be satisfied by the Trustee or the Debtor-in-Possession to the extent Landlord determines, in Landlord's sole discretion:

      (i)     **Adequate Assurances.** The Trustee or the Debtor-in-Possession cures, or provides "Adequate Assurance" (as defined below) to Landlord, that the Trustee or the Debtor-in-Possession can cure all monetary Events of Default under the Lease by full and complete payment, within ten (10) days from the date of the assumption, and that the Trustee or the Debtor-in-Possession cures all non-monetary Events of Default under the Lease within thirty (30) days from the date of the assumption;

      (ii)     **Landlord Compensation.** The Trustee or the Debtor-in-Possession compensates Landlord, or provides Adequate Assurance to Landlord, that within ten (10) days from the date of the assumption, Landlord shall be compensated by full and complete payment for any pecuniary loss Landlord suffers as a result of any Event of Default of Tenant, the Trustee or the Debtor-in-Possession, as set forth in Landlord's notice (which contains a statement of Landlord's pecuniary loss), given to the Trustee or the Debtor-in-Possession; and

      (iii)     **Future Performance.** The Trustee or the Debtor-in-Possession provides Landlord with Adequate Assurance of the future performance of Tenant's obligations under the Lease, including, without limitation, depositing with Landlord, as security, in addition to that previously established pursuant to the provisions of the Lease, an amount equal to three (3) monthly installments of monthly rent and additional rent then accruing under the Lease.

      For purposes of this subparagraph (c), "Adequate Assurance" shall mean that (i) Landlord determines that the Trustee or Debtor-in-Possession has, and shall continue to have, sufficient unencumbered assets after the payment of all secured obligations and administrative expenses to assure Landlord that the Trustee or the Debtor-in- Possession has sufficient funds to fulfill Tenant's obligations under the Lease; and (ii) an order was entered segregating sufficient sums payable to Landlord, or a valid and perfected lien and security interest are granted to Landlord in the property of Tenant, Trustee or the Debtor-in-Possession, as may be acceptable to Landlord, to secure the obligations of the Trustee or the Debtor-in-Possession to cure the monetary or non-monetary defaults under the Lease within the time periods set forth above.

      (d)     **Landlord's Right to Terminate Lease on Further Filing of Bankruptcy Petition.** If the lease is assumed by the Trustee or Debtor-in-Possession pursuant to subparagraph (c) above, and thereafter Tenant is the subject of an Order for Relief under the Bankruptcy Code, then Landlord has the option to terminate the Lease pursuant to the provisions of the Lease.

      (e)     **Condition Upon Assignment.** If the Trustee or Debtor-in-Possession pursuant to subparagraphs (b) and (c) above desires or elects to assign Tenant's interest, or the estate created by the interest under the Lease, to any other person, the interest or estate may be assigned only if Landlord acknowledges in writing that the intended assignee has provided to Landlord, Adequate Assurance (as defined above) of future performance of all of the obligations of Tenant under the Lease. For the purpose of this subparagraph (e), "Adequate Assurance" shall mean that Landlord ascertains that the following conditions are satisfied:

      (i)     **Financial Information.** The assignee has submitted to Landlord a current financial statement, audited by a certified public accountant, that shows a net worth and working capital in amounts determined by Landlord to be sufficient to assure the future performance by the assignee of Tenant's obligations under the Lease; and

      (ii)     **Guaranty.** If requested by Landlord, the assignee has obtained guarantees, in form and substance satisfactory to Landlord, from one or more persons who satisfy Landlord's standards of credit- worthiness.

      (f)     **State Law Action.** Neither Tenant's interest in the Lease nor any estate of Tenant created in the Lease shall pass to any trustee, receiver, assignee for the benefit of creditors, or any other person or entity, or otherwise by operation of law under the laws of any State having jurisdiction of the person or property of Tenant ("State Law"), unless Landlord consents in writing to this transfer. Landlord's acceptance of rent or any other payments from any trustee, receiver, assignee, person, or other entity shall not be deemed to have waived, or waive, the need to obtain Landlord's consent or Landlord's right to terminate this Lease for any transfer of Tenant's interest under this Lease without that consent, and any such event, without Landlord's written consent, shall be deemed an Event of Default.

(g)  **Charges for Use and Occupancy.** When, pursuant to the Bankruptcy Code, the Trustee or the Debtor-in-Possession is obligated to pay reasonable use and occupancy charges for the use of the Premises, the charges shall not be less than the monthly rent and additional rent due under the Lease.

20.  **Landlord's Right to Re-Enter.** If Tenant shall default in any of the terms, conditions or covenants of this Lease, then it shall be lawful for Landlord to re-enter the Premises and to again possess and enjoy the Premises.

21.  **Default by Tenant and Landlord's Remedies.**

(a)  **Event of Default.** If any one or more of the following events shall occur and be continuing beyond the period set forth in any default notice provided to be given, an Event or Events of Default shall have occurred under this Lease:

(i)  **Non-Payment.** If Tenant shall fail to pay any installment of monthly rent, additional rent or other sums due from Tenant to Landlord under this Lease; or

(ii)  **Non-Performance.** If Tenant shall fail to comply with any of the other terms, covenants, conditions or obligations of this Lease and such failure in compliance shall continue for thirty (30) days after delivery of notice from Landlord to Tenant specifying the failure, or, if such failure cannot with due diligence be remedied within thirty (30) days, Tenant shall not, in good faith have commenced within said thirty (30) day period to remedy such failure and continued diligently and continuously thereafter to prosecute the same to completion; or

(iii)  **Vacation or Abandonment.** If Tenant shall vacate or abandon the Premises.

(b)  **Right to Terminate Lease and Re-Enter.** Landlord may, in addition to any other remedy available to Landlord under this Lease or available under Requirements, at Landlord's option, on 10 days' notice to Tenant, declare this Lease terminated at the expiration of such 10 day period and Tenant shall quit and surrender possession of the Premises, but Tenant shall remain liable to Landlord as hereinafter provided, and upon Tenant's failure to surrender of possession, Landlord may re-enter the Premises by summary proceeding or otherwise free from any estate or interest of Tenant therein.

(c)  **Landlord's Right to Restore and Re-Let, and Tenant's Liability for Expenses.** In the event that Landlord shall obtain possession by re-entry, legal or equitable actions or proceedings or other lawful means as a result of an Event of Default by Tenant, Landlord shall have the right, without the obligation, to make renovations, alterations and repairs to the Premises required to restore them to the condition the same should be during the term of the Lease, and to re-let the Premises or any part thereof for a term or terms that may be less or more than the full term of the Lease had Landlord not re-entered and re-possessed or terminated the Lease, and Landlord may grant reasonable concessions in the re-renting to a new tenant, without affecting the liability of Tenant under the Lease. Landlord shall in no way be responsible for any failure to re-let all or any part of the Premises or for any failure to collect any rent due after any re-letting, and in no event shall Tenant be entitled to any surplus rents collected. Any of the foregoing action taken or not taken by Landlord shall be without waiving any rights that Landlord may otherwise have under Requirements or pursuant to the terms of this Lease. Tenant shall pay Landlord all legal and other expenses incurred by Landlord in terminating this Lease by reason of an Event of Default, in obtaining possession of the Premises, in making all alterations, renovations and repairs and in paying the usual and ordinary commissions for re-letting the same, together with interest thereof at the Default Rate, which interest shall accrue from the date of Landlord's demand.

(d)  **Survival Covenant - Liability of Tenant after Re-Entry and Possession or Termination.**

(i)  **Survival of Obligations.** If any Event of Default occurs (whether or not this Lease shall be terminated as a result of an Event of Default), Tenant shall remain liable to Landlord for all monthly rent and additional rent herein reserved (including, but not limited to, the expenses to be paid by Tenant pursuant to the provisions of this Lease); less the net amount of rent, if any, that shall be collected and received by Landlord from the Premises, for and during the remainder of the term of this Lease. In addition, Landlord may, from time to time, without terminating this Lease, as agent for Tenant, re-let the Premises or any part thereof for such term or terms, at such rental or rentals, and upon such other terms and conditions as Landlord may deem advisable, in accordance with the provisions of subparagraph (c) above. The failure or refusal of Landlord to re-let the Premises or any part thereof shall not release Tenant or affect Tenant's liability for damages. Landlord shall have the right, without the obligation, following re-entry and possession or termination, to apply any rentals received by Landlord in the following order: (i) to the payment of indebtedness or costs other than rent or damages; (ii) to the payment of any cost of re-letting; (iii) to the payment of any cost of altering or repairing the Premises; (iv) to the payment of monthly rent and additional rent, or damages, as the case may be, due and unpaid hereunder; and (v) the residue, if any, shall be held by landlord and applied for the payment of future monthly rent and additional rent, or damages, as the case may be, as the same may become due and payable hereunder. Landlord may sue period-ically for and collect the amount that may be due pursuant to the provisions of this paragraph, and Tenant expressly agrees that any such suit shall not bar or in any way prejudice the rights of Landlord to enforce the collection or the

amount due at the end of any subsequent period by a like or similar proceeding. The words "re- entry" and "re-enter," as used herein, shall not be construed as limited to their strict legal meaning.

(ii)    **Rights on Termination.** Should Landlord terminate this Lease by reason of an Event of Default, then Landlord shall thereupon have the right, without the obligation, as an alternative to suing Tenant periodically pursuant to the provisions of subparagraph (i) above, to recover from Tenant the difference, if any, at the time of such termination, between the amount of monthly rent, sales rent and additional rent reserved herein for the remainder of the term over the then reasonable rental value of the Premises for the same period both discounted to present value (as reasonably determined by Landlord) minus one point. Landlord shall not, by any re-entry or other act, be deemed to have terminated this Lease, unless Landlord shall notify Tenant in writing, that Landlord has elected to terminate the same.

(iii)    **Remedies Cumulative.** The remedies of Landlord specified herein shall be cumulative as to each other and as to all such allowed by Requirements.

(e)    **Right to Injunction.** In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Landlord shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this Lease of any particular remedy shall not preclude Landlord from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event of Landlord obtaining possession of the Premises, by reason of the violation by Tenant of any of the covenants and conditions of this Lease, or otherwise.

22.    **Tenant's Trade Fixtures and Removal.** Any trade equipment, trade fixtures, goods or other property of Tenant shall be removed by Tenant on or before the expiration of the Lease term or sooner termination of the Lease term. Any trade equipment, trade fixtures, goods or other property of Tenant not removed by Tenant on the expiration of the Lease term or sooner termination of the Lease term, or upon any deserting, vacating or abandonment of the Premises by Tenant, or upon Tenant's eviction, shall, at Landlord's discretion, be considered as abandoned and Landlord shall have the right (without any obligation to do so), without notice to Tenant, to sell or otherwise dispose of Tenant's property, at the expense of Tenant, and Landlord shall not be accountable to Tenant for any proceeds of the sale, or for any damage or loss to Tenant's property.

23.    **Estoppel Certificate.** Within ten (l0) days of request from Landlord, Tenant shall execute, acknowledge and deliver to Landlord, a written instrument certifying (i) that this Lease has not been modified and is in full force and effect, or if there has been a modification, that the Lease is in full force and effect as modified, stating the modification; (ii) specifying the dates to which rent and other sums due from Tenant under this Lease have been paid; (iii) stating whether or not to the knowledge of Tenant, Landlord is in default, and if so, the reasons for the default; and (iv) stating the commencement date of the Lease term.

24.    **Limitations on Landlord's Liability.** Notwithstanding any provision of this Lease to the contrary, Tenant agrees that it shall look only to the Premises (which includes all of Landlord's equity or interest therein, including proceeds of sale, insurance and condemnation) in seeking to enforce any obligations or liabilities whatsoever of Landlord under this Lease or to satisfy a judgment (or any other charge, directive or order) of any kind against Landlord; and Tenant shall not look to the property or assets of any of the any officers, directors, shareholders (or principal or partner of any non-corporate Landlord), employees, agents, or legal representatives of Landlord in seeking to enforce any obligations or liabilities whatsoever of Landlord under this Lease or to satisfy a judgment (or any other charge, directive or order) of any kind against Landlord, and in no event shall any deficiency judgment be sought or obtained against Landlord. No person who is an officer, director, shareholder (or principal or partner of any non-corporate Landlord), employee, agent, or legal representative of Landlord shall be personally liable for any obligations or liabilities of Landlord under this Lease.

25.    **Services and Utilities.** Tenant shall, at Tenant's own expense, obtain all utility services supplying the Premises, including but not limited to electricity, water, sewer, standby water for sprinkler, gas, telephone and all other utilities and other communication services. in its own name, effective as of the commencement of the Lease, and shall pay the cost directly to the applicable utility, including any fine, penalty, interest or cost that may be added thereto for non-payment thereof.

26.    **Security.** Upon execution and delivery of this Lease, Tenant shall deposit the sum of $3000 ($00) Dollars with Landlord, as security for the full and faithful performance by Tenant of all of the terms, conditions and covenants of this Lease on Tenant's part to be performed, which sum shall be returned to Tenant following the expiration of the Lease term, provided there shall not then be an Event of Default or an event that with the giving of notice or the lapse of time, or both, shall constitute an Event of Default. Landlord shall have the right (but not the obligation), to apply any part of the deposit to cure an Event of Default of Tenant, and if Landlord does so, Tenant shall, upon demand, deposit with Landlord the amount applied, so that Landlord shall have the full deposit on hand at all times. If Landlord shall sell the Premises, Landlord shall have the right to transfer the security to the new landlord, and upon so doing Landlord shall be released by Tenant from all liability for the return of the security and Tenant shall look solely to the new landlord for the return of the

{00037466.DOC}

security, and this shall apply to every transfer made of the security to a new landlord. The security deposited by Tenant under this Lease shall not be mortgaged, assigned or encumbered by Tenant.

27. **Qualification in Arizona .** Tenant represents and warrants to Landlord that it has qualified with the Secretary of State of Arizona to do business in the State of Arizona.

28. **Notices.** All notices, consents, demands, communications or approvals required or permitted by this Lease shall be in writing and shall be delivered personally or delivered by certified or registered mail, return receipt requested, addressed as follows:

If to Landlord: _8877 South 137th circle suite 1_
_Omaha, NE  68138_

With copy to: _8877 South 137th Circle Svite1_
_Omaha, NE  68138_

If to Tenant: _8877 South 137th Circle Svite1_
_Omaha, NE  68138_

With copy to: _8877 South 137th Circle Svite1_
_Omaha, NE  68138_

Landlord and Tenant may, by notice given in the same manner set forth above, designate a different address to which subsequent notices shall be sent. Notice shall be deemed given when delivered, if delivered personally or by reputable overnight delivery service that provides proof of delivery, or when mailed if sent by certified or registered mail, return receipt requested.

29. **Broker.** Each party represents and warrants to the other no real estate broker was instrumental in effecting this Lease. Tenant shall indemnify and defend Landlord from the claim of any broker, that such broker was authorized on behalf of Tenant to make an offer to Landlord with respect to this transaction.

30. **Tenant's Right to Quiet Enjoyment.** Upon paying the rents and other sums required of Tenant under the Lease and faithfully and fully performing the terms, conditions and covenants of the Lease on Tenant's part to be performed, Tenant shall peaceably and quietly have, hold and enjoy the Premises for the Lease term.

31. **Miscellaneous.**

(a)     **Validity of Lease.** The provisions of this Lease are severable. If any provision of the Lease is adjudged to be invalid or unenforceable by a court of competent jurisdiction, it shall not affect the validity of any other provision of this Lease.

(b)     **Non-Waiver by Landlord.** The rights, remedies, options or elections of Landlord in this Lease are cumulative, and the failure of Landlord to enforce performance by Tenant of any provision of this Lease applicable to Tenant, or to exercise any right, remedy, option or election, or the acceptance by Landlord of the annual fixed rent or additional rent from Tenant after any default by Tenant, in any one or more instances, shall not act as a waiver or a relinquishment at the time or in the future, of Landlord of such provisions of this Lease, or of such rights, remedies, options or elections, and they shall continue in full force and effect.

(c)     **Entire Agreement.** This Lease contains the entire agreement between the parties. No representative, agent or employee of Landlord has been authorized to make any representations, warranties or promises with respect to the letting, or to vary, alter or modify the provisions of this Lease. No additions, changes, modifications, renewals or extensions of this Lease, shall be binding unless reduced to writing and signed by both parties.

(d)     **Effective Law.** This Lease shall be governed by, construed and enforced in accordance with the laws of the State of Arizona without giving effect to its principles of conflicts of law. Landlord and Tenant waive their right to trial by jury in any action, proceeding or counterclaim brought by either of the parties against the other, or with respect to any issue or defense raised therein,

{00037466.DOC}

on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use and occupancy of the Premises, including summary proceedings and possession actions, and any emergency statutory or other statutory remedy.

(e)    **Commercial Lease.** This Lease shall be construed as a commercial Lease.

(f)    **Captions.** The captions of the paragraphs in this Lease and the Table of Contents are for reference purposes only and shall not in any way affect the meaning or interpretation of this Lease.

(g)    **Obligations Joint and Several.** If there is more than one party tenant, their obligations under this Lease are joint and several. If Tenant is a partnership, the obligations of Tenant under this Lease are joint and several obligations of each of the partners and of the partnership.

(h)    **Counterparts.** This Lease may be executed in one or more counterparts, each of which shall be an original, and all of which constitutes one and the same Lease.

(i)    **Landlord's Performance of Tenant's Obligations.**
The performance by Landlord of any obligation required of Tenant under this Lease shall not be construed to modify this Lease, nor shall it create any obligation on the part of Landlord with respect to any performance required of Tenant under this Lease, whether Landlord's performance was undertaken with the knowledge that Tenant was obligated to perform, or whether Landlord's performance was undertaken as a result of mistake or inadvertence.

(j)    **Remedies and Rights Not Exclusive.** No right or remedy conferred upon Landlord shall be considered exclusive of any other right or remedy, but shall be in addition to every other right or remedy available to Landlord under this Lease or by law. Any right or remedy of Landlord, may be exercised from time to time, and as often as the occasion may arise. The granting of any right, remedy, option or election to Landlord under this Lease shall not impose any obligation on Landlord to exercise the right, remedy, option or election.

(k)    **Signature and Delivery by Landlord.** This Lease is of no force and effect unless it is signed by Landlord and Tenant, and a signed copy of this Lease delivered by Landlord to Tenant. The mailing, delivery or negotiation of this Lease by Landlord or Tenant or any agent or attorney of Landlord or Tenant prior to the execution and delivery of this Lease as set forth in this subparagraph shall not be deemed an offer by Landlord or Tenant to enter into this Lease, whether on the terms contained in this Lease or on any other terms. Until the execution and delivery of this Lease as set forth in this subparagraph, Landlord or Tenant may terminate all negotia- tions and discussions of the subject matter of this Lease, without cause and for any reason, without recourse or liability.

(l)    **Inspection, Length of Time of Tenant's Default.**
Nothing in this Lease requires Landlord at any time, to inspect the Premises to determine whether Tenant is in default of Tenant's obligations under this Lease. Any default by Tenant of the provisions of this Lease for any length of time, and whether Landlord has direct or indirect knowledge or notice of the default, is not a waiver of Tenant's default by Landlord, and Landlord has the right to declare Tenant in default, notwithstanding the length of time the default exists.

(m)    **No Offer.** The submission of the Lease to Tenant shall not be deemed an offer by Landlord to rent the Premises to Tenant, such an offer only being made by the delivery to Tenant of a Lease signed by Landlord.

(n)    **Surrender.** Neither the acceptance of keys to the Premises nor any other act or thing done by Landlord or any agent, employee or representative of Landlord shall be deemed to be an acceptance of a surrender of the Premises, excepting only an agreement in writing, signed by Landlord, accepting or agreeing to accept a surrender of the Premises.

(o)    **Drafting Ambiguities; Interpretation.** In interpreting any provision of this Lease, no weight shall be given to nor shall any construction or interpretation by influenced by the fact that counsel for one of the parties drafted this Lease, each party recognizing that it and it's counsel have had an opportunity to review this Lease and have contributed to the final form of this Lease. Unless otherwise specified, the words "include" and "including" and words of similar import shall be deemed to be followed by the words "but not limited to" and the word "or" shall be "and/or."

(p)    **References.** In all references to any persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of this Lease may require.

(q)    **Binding Effect.** This Lease is binding upon and shall inure to the benefit of the parties, their legal representatives, successors and permitted assigns.

{00037466.DOC}

(r)    **Landlord Defined.** The term "Landlord" in this Lease means and includes only the owner at the time in question of the Premises and, in the event of the sale or transfer of the Premises, Landlord shall be released and discharged from the provisions of this Lease thereafter accruing, but such provisions shall be binding upon each new owner of the Premises while such party is an owner.

(s)    **Time of the Essence.** Time is of the essence of this Lease.

(t)    **No Recordation.** Neither this Lease, nor any memorandum, affidavit or other writing with respect to this Lease, shall be recorded by Tenant or by anyone acting through, under or on behalf of Tenant, and the recording thereof in violation of this provision shall make this Lease voidable at Landlord's election.

**TENANT:**

Eat Fit Go Healthy Foods, LLC,
a Nebraska limited liability company

By: _Sardeep VanChidon_
Name: _____
Title: _CEO_

Date Executed: _8 - 16 - 16_

**LANDLORD:**

Live Well Enterprises, LLC
a Nebraska limited liability company

By: _Aaron McKeever_
Name: _Aaron McKeever_
Title: _President_

Date Executed: _8 - 16 - 16_

{00037466.DOC}

Page 17