# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF ) | Case No. BK 18-81127-TLS |
| ) | |
| EAT FIT GOT HEALTHY FOODS, LLC et al[1] ) | Chapter 11 |
| ) | |
| Debtors. ) | |

## MOTION FOR ORDER APPROVING BIDDING PROCEDURES

COMES NOW, Eat Fit Got Healthy Foods, LLC, et al., debtors and debtors-in-possession in the above captioned bankruptcy case ("Debtors"), pursuant to 11 U.S.C. §§ 105(a) and 363, and in support of their Motion for Order Approving Bidding Procedures ("Motion"), states and alleges as follows:

1. On July 31, 2018 (the "Petition Date") Debtors filed 10 separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court (the "Related Cases") in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court").

2. Each Debtor remains in possession of its assets and continues to operate as debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3. An Official Committee of Unsecured Creditors has not yet been appointed in any of the Related Cases.

4. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Debtors' Background

---

[1] Debtors in this case include: Eat Fit Go Omaha Kitchen, LLC, Eat Fit Go Kansas City Kitchen, LLC, Eat Fit Go Georgia Kitchen, LLC, Eat Fit Go Arizona Kitchen, LLC, Eat Fit Go Healthy Foods - Des Moines, LLC, Eat Fit Go Healthy Foods - Kansas City, LLC, EFG Shared Services, LLC (No Rev), Eat Fit Go Healthy Foods - Omaha, LLC, and Eat Fit Go Healthy Foods - Minnesota, LLC.

149651320.1

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Bidding Procedures

7. Debtors provide healthy chef-made meals that are high in protein and made fresh daily. Debtors' business operations offer one stop shopping where a customer can purchase breakfast, lunch, dinner, and snacks that are pre-cooked, pre-portioned and ready-to-eat.

8. Capitalizing on a growing trend in healthy foods, Debtors opened the first store in February of 2016, in Omaha, NE, and have grown to 33 stores across eight states utilizing a mix of franchised locations and corporate owned stores. Beyond the rapidly increasing number of storefronts, Debtors plan to expand into e-commerce with a mobile app to facilitate delivery of healthy foods to customers' doors within 24 hours.

**Relation of Debtors**

9. Each of Debtors is a legally separately entity. With the exception of Eat Fit Go Healthy Foods – Omaha, LLC, each of the other Debtors (the "Subsidiaries") is a wholly-owned subsidiary of Eat Fit Go Healthy Foods, LLC (the "Parent").[2] Each Debtor plays a unique role in Debtors' ongoing operations, be it as a manger of operations, corporate store, corporate kitchen, or leaseholder. Debtors utilize common branding for their operations.

**Relief Requested**

10. After evaluating all of their alternatives, and after consultation with Access Bank (the "Lender"), Debtors have concluded that the best mechanism for maximizing the value of their assets is through the sale of all or substantially all of their assets as a going concern (the "Assets"), free and clear of all liens and encumbrances pursuant to 11 U.S.C. § 363 ("Sale"). In connection therewith, Debtors desire to establish certain bidding procedures ("Bidding Procedures") to facilitate the Sale and maximize the return to the estates from the Sale.

---

[2] Parent is the managing member of Eat Fit Go Healthy Foods – Omaha, LLC.

149651320.1

Case 18-81127-TLS    Doc 143    Filed 12/27/18    Entered 12/27/18 14:30:05    Desc Main
                  Document      Page 3 of 11

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Bidding Procedures

11. To that end, Debtors have filed an appropriate motion to retain the firm of Peak Franchise Capital, LLC (the "Firm") as professional marketers to assist Debtors in these bankruptcy cases. The Firm is a Dallas based entity that specializes in Acquisitions & Divestitures, Debt & Equity Capital issues, Restructuring & Bankruptcy Services, CFO Services, and Business Valuations. The Firm also has expertise in franchise based companies.

12. Debtors have filed a motion contemporaneously herewith seeking approval of the Sale (the "Sale Motion") and a motion seeking approval of procedures governing the assumption and assignment of executory contracts and unexpired leases. Debtors direct the Court to the description of the facts and the arguments in the Sale Motion for further support of this Motion.

13. By this Motion, Debtors request that the Court enter an Order approving the Bidding Procedures to be used in connection with the Sale. A copy of the Bidding Procedures is attached hereto as Exhibit "A".

14. The Bidding Procedures allow Debtors to conduct the Sale in a controlled, fair and open fashion that will encourage participation by financially capable bidders, thereby increasing the likelihood that Debtors will receive the best possible consideration for the Assets. Debtors believe that the Bidding Procedures are consistent with other procedures previously approved in this district and other bankruptcy courts.

15. Among other things, the Bidding Procedures set forth procedures for Debtors to hereafter enter into a purchase agreement with one or more stalking horse bidders (each, a "Stalking Horse Bidder"). Debtors may, but are not required to, and with the input of Access Bank "Lender"), select a Stalking Horse Bidder for the Assets for the purpose of establishing a minimum acceptable bid with which to begin the bidding at the Auction.

149651320.1

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Bidding Procedures

WHEREFORE, Debtors respectfully prays this Court enter an order: (1) granting this Motion in full; (2) overruling all objections to this Motion; (3) approving and authorizing the Bidding Procedures; and (4) granting any other relief at equity or law this Court deems necessary or appropriate.

        **EAT FIT GO HEALTHY FOODS, LLC ET AL., Debtors**

By:   /s/ Patrick R. Turner
     Patrick R. Turner #23461
     Stinson Leonard Street, LLP
     1299 Farnam Street, Suite 1500
     Omaha, NE 68102
     Tel. No. (402) 342-1700
     Fax No. (402) 342-1701
     patrick.turner@stinson.com

Counsel for Debtors

149651320.1

## EXHIBIT "A"

Auction and Bidding Procedures

Assets to be Sold

All assets of Debtors are being offered for sale ("Assets"), including:

(1) all assets identified in the Debtors' bankruptcy schedules;

(2) all inventory, whether finished, work in process or raw materials;

(3) all intellectual property rights;

(4) all contractual or leasehold rights to be assume and assigned by Debtors; and

(5) all assets acquired by the Debtors after the filing of this bankruptcy case.

Provided however, that Debtors, unless otherwise agreed to in writing, will not be offering for sale their cash, accounts receivable, causes of action possessed or owned by Debtors (including any recoveries related thereto), causes of action existing under the bankruptcy code, including Title 5 thereof (including any recoveries related thereto); and any assets that have been sold by Debtors during the pendency of these bankruptcy cases.

Bidding Procedures

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the sale of the Assets to the Successful Bidder (as defined below), which are designed to facilitate a full and fair process (the "Bidding Process") and maximize the value of the Assets for the benefit of Debtors; creditors, interest holders and bankruptcy estates.

Preliminarily Qualified Bidders

Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by Debtor, in consultation with Access Bank (also referred to as "Lender" or "the Lender"), in order to participate in the Bidding Process, each interested person or entity (a "Potential Bidder") must deliver (unless previously delivered) to Debtor and Peak Franchise Capital, LLC ("Peak"):

(i) An executed confidentiality agreement in a form acceptable to Debtors;

(ii) Such form of financial disclosure and credit-quality support or enhancement acceptable to Debtors and their Lender; and

(iii) A preliminary (non-binding) proposal regarding: (a) the purchase price; (b) specific assets and contractual or leasehold rights to be purchased or assigned; (c) any liabilities to be assumed; (d) any assets, liabilities and/or equity interests expected to be specifically excluded; (e) the structure and financing of the transaction (including, but not limited to, the source of financing for the purchase price).

149651320.1

The information delivered to Debtors by any Potential Bidder shall be shared with the Lender.

A Potential Bidder that delivers the documents described in subparagraphs (i) through (ii) above and whose financial information demonstrates the financial capability of the Potential Bidder to consummate the sale, and that Debtors (in consultation with their Lender) determines is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale within an acceptable time frame shall be deemed a "Preliminarily Qualified Bidder." Notwithstanding anything herein, Access Bank shall be deemed a Preliminarily Qualified Bidder and a Qualified Bidder (as defined below) for purposes of any credit bid it may choose to make at any auction hereunder.

As promptly as practicable after a Potential Bidder delivers all of the materials required by subparagraphs (i) through (ii) above, Debtors shall determine (in consultation with their Lender) and shall notify the Potential Bidder in writing, whether the Potential Bidder is a Preliminarily Qualified Bidder.

Due Diligence

Until the Bid Deadline (as defined below), Debtors shall afford each Preliminarily Qualified Bidder due diligence access to the Assets and Debtors' business. Due diligence access may include management presentations as may be scheduled by Debtors, access to data rooms, on-site inspections and such other matters that a Preliminarily Qualified Bidder may reasonably request. Requests for due diligence materials/inspections must be directed to the Peak team members identified below and Peak may, in their discretion, coordinate due diligence efforts such that multiple Preliminarily Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither Debtors nor any of their affiliates (or any of their respective representatives) shall be obligated to furnish any information relating to the Assets and Debtors' business to any Person other than to Preliminarily Qualified Bidders who make an acceptable preliminary proposal, but shall not withhold it from Lender if requested.

Designation of Stalking Horse Bidder

Debtors may, but are not required to, with the input of the Lender, select a stalking horse bidder (each, a "Stalking Horse Bidder") for the purpose of establishing a minimum acceptable bid for the Assets with which to begin the bidding at the Auction (as defined below).

Bid Deadline

A Preliminarily Qualified Bidder that desires to make a bid shall deliver written and electronic copies of their bid and supporting information to Peak:

| Mike Elliott | David Bagley |
|---|---|
| Email: mike.elliott@peakfranchisecapital.com | Email: david.bagley@peakfranchisecapital.com |
| Tel. No. 972-982-2292 | Tel No. 630-248-4145 |
| 4100 Spring Valley Rd | 4100 Spring Valley Rd |
| Suite 535 | Suite 535 |

149651320.1

| Dallas, TX 75244 | Dallas, TX 75244 |
|---|---|

With Copies To:

| Patrick R. Turner (No. 23461)<br>Stinson Leonard Street, LLP<br>1299 Farnam Street, Suite 1500<br>Omaha, NE 68102<br>Tel. No. 402-342-1700<br>Fax No. 402-342-1701<br>Patrick.turner@stinson.com | Brock Huber<br>CEO<br>Eat Fit Go<br>8877 South 137th Circle<br>Omaha, NE 68138<br>brock.hubert@eatfitgo.com |
|---|---|

so as to be received not later than 12:00 p.m. (Central Standard Time) on January 25, 2019 (the "Bid Deadline").  Only those Preliminarily Qualified Bidders who submit timely written bids will be entitled to bid at the Auction.  Debtors shall, upon receipt of a bid, send copies of such bid to the Lender by electronic mail to the respective representatives of the Lender, as designated in writing by the Lender to Debtors.

Bid Requirements

All bids must be received by the Bid Deadline and include the following information and documents (the "Required Bid Materials"):

(i)   A letter stating: (a) that the Preliminarily Qualified Bidder offers to purchase the Assets and the purchase price proposed to be paid by the Preliminarily Qualified Bidder for the Assets (subject to paragraph (ii) below); (b) that such bidder is prepared to enter into a legally binding purchase agreement; (c) that the bidder's offer is irrevocable until the Assets on which the Preliminarily Qualified Bidder is submitting a bid have been sold pursuant to the closing of the sale or sales approved by the Bankruptcy Court,  unless such Preliminarily Qualified Bidder is deemed to have submitted the Successful Bid or the Back-up Bid (each as defined below) in accordance with these procedures, in which case such bidder's offer is irrevocable until two (2) business days after the closing of the Sale; (d) that such bid is unconditional (except as set forth in the Marked Agreement) and is not subject to any due diligence or financing contingency; and (e) setting forth any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals;

(ii)   In the event Debtors enter into a purchase agreement with a Stalking Horse Bidder, the purchase price submitted by any Preliminarily Qualified Bidder must be equal to or greater than the sum of: (a) the purchase price set forth in such purchase agreement; and (b) a minimum overbid amount of not less than $25,000.00;

(iii)   In the event a Stalking Horse Bidder is designated for the Assets, a duly executed copy of an asset purchase agreement substantially in the form of that agreed to with the Stalking Horse Bidder and a redline of the Preliminarily Qualified Bidder's

proposed purchase agreement over that of the purchase agreement with the Stalking Horse Bidder (a "Marked Agreement"). If no Stalking Horse Bidder is designated for the Assets, a duly executed copy of an asset purchase agreement. Preliminarily Qualified Bidders must provide a commitment to close as soon as reasonably practicable following the entry of the order approving the Sale and shall provide that the proceeds of the Sale, to the extent of the Lender's secured indebtedness (principal balance, accrued interest, late charges and attorney fees) shall be paid directly to the Lender and any remaining proceeds shall be paid to Debtors**;**

(iv) A deposit (a "Deposit") in the amount equal to 15% of the proposed purchase price in immediately available funds payable to Debtors, which shall be placed in a segregated account of Debtors, not subject to the claims, liens, security interests or encumbrances of any party, except as specified herein. Deposits shall be returned to all Qualified Bidders (as defined below) other than the Successful Bidder(s) and the Back-up Bidder(s) within three (3) business days after entry of the order approving the Sale. If the sale of the Assets to the Successful Bidder closes, the Successful Bidder's Deposit shall be applied to the purchase price at closing in accordance with the purchase agreement between Debtors and such Successful Bidder, and, within three (3) business days after the closing of the Sale to the Successful Bidder, the Back-up Bidder's Deposit shall be returned to it. If a Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder and Debtors is not then in material breach of the purchase agreement, Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder and such Deposits irrevocably will become the property of Debtors and shall not be credited against the purchase price of the subsequent buyer (in addition to Debtors reserving all other rights and remedies against the Successful Bidder). In such instance, the Back-up Bidder's deposit shall be applied to the purchase price at closing of the Sale with the Back-up Bidder;

(v) Written evidence of its available cash or a commitment for financing or other evidence of proposed purchaser's ability to consummate the proposed transaction;

(vi) A copy of a board resolution or similar document demonstrating authority to make such non-revocable bid, to execute the purchase agreement and to close a purchase of the Assets; and

(vii) Full disclosure of the identity of each entity that will be bidding for the Assets or otherwise participating with such Bid, and the complete terms of any such participation.

(viii) Any other items that Debtors or Peak may reasonably request.

A timely bid received from a Preliminarily Qualified Bidder that includes all of the Required Bid Materials is a "Qualified Bid" and such bidder is, as is the Lender, a "Qualified Bidder". All Required Bid Materials received by Debtors shall be shared with Lender. **ANY BIDDER THAT FAILS TO COMPLY WITH THESE REQUIREMENTS, EXCEPT AS**

149651320.1

**OTHERWISE PERMITTED BY THESE PROCEDURES, MAY NOT BE CONSIDERED A QUALIFIED BIDDER.**

Debtors reserves the right, in consultation with Lender, to determine the value of any Qualified Bid (either by itself or in connection with one or more other Qualified Bids or Debtors; other restructuring alternatives), and which Qualified Bid constitutes the highest or best offer.

Right to Credit Bid

The Lender may make one or more credit bids for some or all of the Assets securing their claims to the fullest extent permitted by §363(k).  The Lender shall be permitted to credit bid all or a portion of its respective debt as part of its respective or collective bid at or prior to the Auction (defined below), subject to §363(k) of the Bankruptcy Code, and shall not be required to post a Deposit in any case.  A credit bid by the Lender (as to any portion(s) of the Assets or all of the Assets) and all higher credit bids made by the Lender during the Auction shall be deemed in all respects equal in value, and in its economic effect on Debtors' estates, to an all-cash bid in an amount equal to the face value of such credit bid on a dollar-for-dollar basis.  Provided however that the total accepted credit bid or bids of the Lender can never exceed the amount Lender is owed, plus any recoverable fees as of the auction date and any assessments of costs and expenses under 11 U.S.C §506(c).

Subject to §363(k) of the Bankruptcy Code, the Lender may credit bid notwithstanding that a final order allowing such Lender's claims against Debtors may not be entered prior to the Auction.

Other than as set forth in this section, notwithstanding anything contained in the Bidding Procedures to the contrary, nothing herein will in any way impair, alter or otherwise affect the right of the Lender to "credit bid" pursuant to §363(k) of the Bankruptcy Code

"As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Debtors, their agents or their estates.  By submitting a bid, each Preliminarily Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or as set forth in the purchase agreement of the Successful Bidder (defined below).

Free and Clear of Any and All Interests

Except as otherwise provided in the Successful Bidder's purchase agreement, all of Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon

(collectively, the "Interests") to the maximum extent permitted by §363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets, which proceeds shall be paid directly to the Lender, to the extent of the Lender's secured indebtedness (principal balance, accrued interest, late charges and attorney fees), and any remaining proceeds shall be paid to the Debtor.

The Auction and Auction Procedures

Unless the Lender is the only Qualified Bidder, an auction (the "Auction") shall be conducted at a time and place to be identified and beginning at 10:00 a.m. (Central Standard Time) on January 25, 2019, or such other place and time as Debtors shall notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction, as set forth above.

Only Debtors and their respective advisors, the Lender, Qualified Bidders who have submitted Qualified Bids and their respective advisors, and the United States trustee or his/her representatives will be entitled to attend, participate and be heard at the Auction, and only Qualified Bidders will be entitled to make any subsequent overbids at the Auction. Each Qualifying Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale. The Auction may, in Debtors' discretion, include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

Debtors may, upon consultation with the Lender, permit a Qualified Bidder to bid by telephone, in person or any combination thereof, provided that at least one representative of the Qualified Bidder is present at the Auction in person.

At the Auction, bidding will begin at the purchase price stated in the highest or otherwise best Qualified Bid for the particular asset being sold (the identity of which shall be announced by Debtors, in consultation with the Lender, at the commencement of the Auction), and will subsequently continue in minimum increments to be determined at the discretion of Debtors. The bidding shall be continuous and competitive and shall not end until all bidders have submitted their last and best offers. Qualified Bidders will be permitted to increase their bids at the Auction, in accordance with the terms hereof, as many times as they wish.

As soon as practicable after the conclusion of the Auction, Debtors shall, with the consultation of the Lender: (a) review each Qualified Bid on the basis of the financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; and (b) identify the highest or otherwise best offer(s) for the Assets (to the extent any such bid is acceptable to Debtors each a "Successful Bid" and each bidder making such bid, a "Successful Bidder") and the second highest and best offer for the purchase of the Assets (the "Back-up Bid" and the bidder making such bid, the "Back-up Bidder"); provided however, that the selection of a Successful Bid that is for less than the amount of any credit bid or bids offered by the Lender or that could be offered by the Lender for the Assets or any portion thereof is subject to the Lender's consent.

149651320.1

Acceptance of Qualified Bids

Debtors shall sell the Assets to any Successful Bidder only upon the approval of a Successful Bid by the Bankruptcy Court after the Sale Hearing. Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute Debtors' acceptance of the bid. Debtors will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

Debtors, in consultation with the Lender, may: (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of Debtors, their estates and creditors; provided, however, that Debtors shall not be deemed to have rejected any bid unless or until either the Sale closes and/or such bid is rejected in writing. Nothing herein contained shall constitute "Party in Interest" status on the holder of a Qualified Bid for purposes of objecting to or contesting Debtors; selection of a Successful Bid or Back-Up Bid.

Sale Hearing

A hearing to approve the Sale (the "Sale Hearing") is scheduled for _____, 20__, at _____ (Central Standard Time). At the Sale Hearing, Debtors, in consultation with the Lender, may present any Successful Bids to the Bankruptcy Court for approval or, in the event of any default by any such Successful Bidder, the Back-up Bid. Debtors reserve all rights not to submit any bid that is not acceptable to Debtors for approval to the Bankruptcy Court. Following the approval of the Sale of all or a portion of the Assets to any Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved Sale, Debtors shall be authorized, but not required, to deem the Back-up Bid (including a credit bid by the Lender), as disclosed at the Sale Hearing, the Successful Bid, and Debtors shall be authorized, but not required, to consummate the sale with the Back-up Bidder without further order of the Bankruptcy Court. Debtors, in the exercise of their business judgment, in consultation with the Lender, reserves its right to change the date of the Sale Hearing in order to achieve the maximum value for the Assets without notice other than by announcement of the adjournment at the Sale Hearing.

Modifications

If necessary to satisfy fiduciary duties, Debtors, in consultation with the Lender, may amend or supplement these Bidding Procedures at any time in any manner that is consistent with these Bidding Procedures and will best promote the goals of the Bidding Process, including extending or modifying the dates described herein and imposing other terms and conditions on Preliminarily Qualified Bidders and Qualified Bidders.