## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF | ) | Case No. BK 18-81127-TLS |
| | ) | |
| EAT FIT GO HEALTHY FOODS, LLC et al.[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | |

## MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363, FED. R. BANK P. 6004, AND LOCAL R. BANK. P. 6004-1, AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES

COME NOW Eat Fit Go Healthy Foods, LLC et al., debtors and debtors-in-possession in the above captioned Chapter 11 bankruptcy case ("Debtors"), and in support of their Motion for Order pursuant to 11 U.S.C. §§ 105(a) and 363, Fed. R. Bank. P. ("Rule") 6004, and Local R. Bank. P. ("Local Rule") 6004-1, Authorizing and Approving the Sale of Substantially All Assets of Debtors Free and Clear of Liens, Claims, Interests, and Encumbrances ("Motion"), state and allege as follows:

### Jurisdiction and Venue

1. On July 31, 2018 (the "Petition Date"), Debtors filed ten (10) separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court (the "Related Cases") in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court").

2. Each Debtor remains in possession of its assets and continues to operate as debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3. An Official Committee of Unsecured Creditors has not yet been appointed in any of the Related Cases.

---

[1] Debtors in this case include: Eat Fit Go Omaha Kitchen, LLC, Eat Fit Go Kansas City Kitchen, LLC, Eat Fit Go Georgia Kitchen, LLC, Eat Fit Go Arizona Kitchen, LLC, Eat Fit Go Healthy Foods - Des Moines, LLC, Eat Fit Go Healthy Foods - Kansas City, LLC, EFG Shared Services, LLC (No Rev), Eat Fit Go Healthy Foods - Omaha, LLC, and Eat Fit Go Healthy Foods - Minnesota, LLC.

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Sale of Assets Facility Free and Clear

4.   This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

5.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

6.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## **Debtors' Background**

7.   Debtors provide healthy chef-made meals that are high in protein and made fresh daily.  Debtors' business operations offer one stop shopping where a customer can purchase breakfast, lunch, dinner, and snacks that are pre-cooked, pre-portioned and ready-to-eat.

8.   Capitalizing on a growing trend in healthy foods, Debtors opened the first store in February of 2016, in Omaha, NE, and have grown to 33 stores across eight states utilizing a mix of franchised locations and corporate owned stores.  Beyond the rapidly increasing number of storefronts, Debtors plan to expand into e-commerce with a mobile app to facilitate delivery of healthy foods to customers' doors within 24 hours.

## **Relation of Debtors**

9.   Each of Debtors is a legally-separate entity.  With the exception of Eat Fit Go Healthy Foods – Omaha, LLC, each of the other Debtors (the "Subsidiaries") is a wholly-owned subsidiary of Eat Fit Go Healthy Foods, LLC (the "Parent").[2]  Each Debtor plays a unique role in Debtors' ongoing operations, be it as a manger of operations, corporate store, corporate kitchen, or leaseholder. Debtors utilize common branding for their operations.

10. Since the Petition Date, the Court has entered orders approving the sale of certain assets of the Debtors. [Docs. 42, 132, 138].

---

[2] Parent is the managing member of Eat Fit Go Healthy Foods – Omaha, LLC.

149932302.1

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Sale of Assets Facility Free and Clear

## SALE OF SUBSTANTIALLY ALL ASSETS: LOCAL RULE 6004-1(C)

11. DEBTORS NOW SEEK TO OBTAIN APPROVAL FOR THE SALE OF SUBSTANTIALLY ALL OF THEIR REMAINING ASSETS.

### Proposed Sale of Assets

12. After evaluating all of their alternatives, and after consultation with Access Bank (the "Lender") and Peak Franchise Capital, LLC (the "Financial Advisor"), Debtors have concluded that the best mechanism for maximizing the value of their assets is through the sale of all or substantially all of their assets as a going concern (the "Assets"), free and clear of all liens and encumbrances pursuant to 11 U.S.C. § 363 (the "Sale").

13. Debtors believe that the Sale of the Assets pursuant to the terms set forth herein will maximize the recovery for Debtors' estate.

### Assets to Be Sold

14. Debtors propose to sell all of the remaining assets of the Debtors as a going concern.

### Terms of Sale

15. To that end, Debtors have filed an appropriate motion to retain the Financial Advisor as professional marketers to assist Debtors in these bankruptcy cases. [Doc. 111.]  The Firm is a Dallas based entity that specializes in Acquisitions & Divestitures, Debt & Equity Capital issues, Restructuring & Bankruptcy Services, CFO Services, and Business Valuations.  The Firm also has expertise in franchise based companies.

16. Debtors have previously filed a motion seeking approval of the bidding procedures related to the sale (the "Bidding Procedures Motion"), [Doc. 145], and a motion seeking approval

149932302.1

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Sale of Assets Facility Free and Clear

of procedures governing the assumption and assignment of executory contracts and unexpired leases related to the Sale, [Doc. 144.]

17. Debtors cannot reasonably determine, at this time, the amount of taxable income Debtors may realize from the Sale. However, it is possible that Debtors will incur taxable income as a result of the Sale.

18. Debtors propose to sell their Assets by way of public sale, without a stalking horse bidder, to one or more buyers and pursuant to the terms contained in the Asset Purchase Agreement attached and hereby incorporated by reference as **Exhibit A**. Thus the notice required by Local Rule 6006-1(A)(1) is not necessary.

19. Shortly after the conclusion of the Sale, the Debtors plan to file a plan of liquidation that specifically contemplates the Sale and the distribution of the proceeds therefrom.

20. The business justification for disposing of substantially all of the estate assets before a disclosure statement has been approved or a plan confirmed is that the Debtors have limited their operations and cannot sustain operations as a going concern. However, the Debtors believe their assets will garner the most value when sold together, as a going concern, rather than piecemeal or through a chapter 7 liquidation sale.

### Applicable Authority to Approve the Sale Free and Clear of All Liens, Claims, Interests and Encumbrances

#### The Sale Should be Authorized Pursuant to Section 363(b)(1)

21. Pursuant to §105(a), a bankruptcy court "may issue any order process or judgment that is necessary or appropriate to carry out the provision of [the Bankruptcy Code]." Additionally, §363(b)(1) provides, in relevant part, that Debtors, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of its bankruptcy estate.

149932302.1

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Sale of Assets Facility Free and Clear

22. The proposed use, sale, or lease of property of the estate may be approved under §363(b) if it is supported by sound business justification.  See e.g. *Meyers v. Martin (In Re Martin)*, 91 F.3d 389, 395 (3rd Cir 1996); *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In Re Continental Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or [a] debtor-in-possession . . . to satisfy its fiduciary duty to the . . . creditors, and equity holder[s], there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *Id.*).

23. The Debtors have determined in consultation with the Lender and the Financial Advisor that the sale of the company as a going concern will maximize the value of the Debtor's assets for distribution to creditors and would exceed the value realized from a liquidation of the Debtor's assets.

24. In reviewing a proposed sale of assets, a bankruptcy court should give deference to debtor's business judgment.  *Esposito v. Title Ins. Co. (In re Fernwood Mkts.)*, 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa 1987); *In Re Crutcher Resource Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale").  *See also Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *In re Channel One Comms., Inc.*, 117 B.R. 493 (Bankr. E.D. Mo. 1990).

25. In addition to showing a business justification, courts, when reviewing a sale under §363, also examine whether: (a) the price is fair and reasonable; (b) the purchaser acted in good faith; and (c) adequate notice was provided.  *In re Channel One Comms., Inc.,* 117 B.R. at  496.

149932302.1

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Sale of Assets Facility Free and Clear

26. By virtue of the fact that the Sale to the Successful Bidder(s) will be subject to a

public auction, the good faith of the Successful Bidder(s) and the reasonableness of the purchase

price will be, *per se*, established.

27. The Court may review a proposed sale to determine whether parties received

adequate notice of this Motion.  Debtors will provide adequate notice of the hearing on this

Motion by providing notice to: (a) all entities known to have expressed an interest in a

transaction with respect to the Assets; (b) all entities known to have asserted any lien, claim,

interest, or encumbrance in or upon the Assets, including Access Bank; (c) the United States

Trustee's office; and (d) any Official Committee of Unsecured Creditors as may be appointed in

this Chapter 11 Case, or in the absence of such a committee, to the creditors included on the

consolidated list filed by Debtors as required by Rule 1007(d) (the "Sale Notice").  The Sale

Notice is reasonably calculated to provide timely and adequate notice to Debtors' major creditor

constituencies.

28. Based on the forgoing, the Sale satisfies all of the requisite conditions for

authorization under §363(b) of the Bankruptcy Code.

### The Sale Satisfies the Requirements of 11 U.S.C. § 363(f) for a Sale Free of Liens, Claims, Interests, and Encumbrances

29. Section 363(f) of the Bankruptcy code provides:

The trustee may sell property under subsection (b) or (c) of this section free and
clear of any interests in such property of an entity other than the estate, only if:

(i)  applicable non-bankruptcy law permits sale of such property free and clear
of such interests;

(ii) such entity consents;

149932302.1

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Sale of Assets Facility Free and Clear

(iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(iv) such interest is in bona fide dispute; or

(v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

30. Debtors submit that, with respect to each such interest, at least one of the five conditions of §363(f) is satisfied. Debtors accordingly requests authority to convey the Assets to the Successful Bidder free and clear of all liens, claims, interests, and encumbrances (collectively "Interests").

31. Having exercised sound business judgment, Debtors have determined that the Sale of the Assets free and clear of all Interests, is in the best interests of Debtors, the estates, and the creditors thereof. As such, the Sale should be approved free and clear of all Interests.

<u>A Finding of Good Faith of the Successful Bidder Pursuant to
Section 363(m) is Appropriate</u>

32. Section 363(m) of the Bankruptcy Code provides the following:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchases or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

33. The Bankruptcy Code does not define good faith; however,

[t]he criteria to be considered when making an evaluation of good faith are almost universally stated as follows: '[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a . . . good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Sale of Assets Facility Free and Clear

*In re Apex Oil Co.,* 92 B.R. 847, 869 (Bkrtcy. E.D. Mo. 1988) (quoting *In re Rock Industries*

*Machinery Corp.,* 572 F.2d 1195, 1998 (7th Cir. 1978)).

34. Debtors will present evidence at the Sale confirmation hearing, that as set forth

above, the Sale will result in a transaction or transactions, in which the Successful Bidder(s) has

at all times acted in good faith.  Debtor, therefore, requests that the Court make a finding that the

Successful Bidder(s) has purchased the Assets in good faith within the meaning of §363(m) of

the Bankruptcy Code.

### Relief under Rule 6004(h) is Appropriate in this Case

35. Rule 6004(h) provides an order authorizing the use, sale, or lease of property other

than cash collateral is stayed until the expiration of 14 days after entry of the Order, unless the

court orders otherwise.  In order to permit the Sale to proceed as expeditiously as possible and to

avoid further degradation or loss of value to the Assets, good cause exists to waive the 14 day

stay provided in Rule 6004(h).

### Conclusion

**WHEREFORE,** Eat Fit Go Healthy Foods, LLC et al., debtors and debtors-in-

possession in the above captioned Bankruptcy Case, respectfully prays this Court enter an order:

(1) granting this Motion in full; (2) overruling all objection to this Motion; (3) approving and

authorizing the sale of the Assets free and clear of all Interests; (4) waiving the 14 day stay

provided in Rule 6004(h); and (5) granting any other relief at equity or law this Court deems

necessary.

149932302.1

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Sale of Assets Facility Free and Clear

**EAT FIT GO HEALTHY FOODS, LLC
ET AL., Debtors**

By: /s/ Paul Hoffmann_____
    Paul M. Hoffmann (MO # 31922)
    Nicholas Zluticky (MO # 61203)
    Stinson Leonard Street, LLP
    1201 Walnut Street, Suite 2900
    Kansas City, MO 64106
    Phone: 816.842.8600
    Fax: 816.691.3495
    Email:    paul.hoffman@stinson.com
             nicholas.zluticky@stinson.com

    Counsel for Debtors

149932302.1

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
Motion for Order Approving
Sale of Assets Facility Free and Clear

**Exhibit A**

149932302.1

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "**Agreement**") is made and entered into as of _____ (the "**Effective Date**"), by and between Eat Fit Go Omaha Kitchen, LLC, Eat Fit Go Kansas City Kitchen, LLC, Eat Fit Go Georgia Kitchen, LLC, Eat Fit Go Arizona Kitchen, LLC, Eat Fit Go Healthy Foods - Des Moines, LLC, Eat Fit Go Healthy Foods - Kansas City, LLC, EFG Shared Services, LLC (No Rev), Eat Fit Go Healthy Foods - Omaha, LLC, and Eat Fit Go Healthy Foods - Minnesota, LLC (collectively, the "**Seller**") and _____ ("**Purchaser**") with reference to the following.

## RECITALS

A.     Seller has commenced cases (lead case number 18-81127-TLS) (the "**Bankruptcy Case**") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* as amended (the "**Bankruptcy Code**") by filing a voluntary petition in the United States Bankruptcy Court for the District of Nebraska (the "**Bankruptcy Court**").   The date of commencement of the Bankruptcy Case is referred to in this Agreement as the "**Petition Date**."

NOW, THEREFORE, in consideration of the foregoing and the agreements of the parties set forth herein, Seller and Purchaser agree as follows.

1.   <u>PURCHASE AND SALE OF ASSETS</u>.  On and subject to the terms and conditions stated in this Agreement, Seller shall sell the Assets identified in Exhibit A (the "**Assets**") to Purchaser and Purchaser shall purchase the Assets from Seller.

2.     <u>ASSIGNMENT AND ASSUMPTION OF EXECUTORY CONTRACTS.</u>  Buyer and Seller hereby agree that at the Closing, and upon all of the terms and subject to all of the conditions of this Agreement, pursuant to section 365 of the Bankruptcy Code, Seller shall assign to Buyer, and Buyer shall assume from Seller, all rights and obligations arising under the contracts as more fully identified on Exhibit "B" (the "**Contracts**").  At the Closing, to the extent not previously paid, Buyer shall pay or cause to be paid (and shall reimburse or cause to be reimbursed to Seller on an after-Tax basis any amounts paid after the date hereof in respect of) any and all cure costs in respect of all of the Contracts.

3.   <u>PURCHASE PRICE AND DEPOSIT</u>.

3.1 <u>Payment</u>.  The purchase price (the "**Purchase Price**") for the Assets will be the sum of $[Purchase Price].  The Purchase Price will be payable by wire transfer of immediately available funds at the Closing described below.

3.2 <u>Deposit</u>.

3.2.1  Purchaser has deposited with _____, a federally-insured commercial bank (the "**Bank**"), the sum of $[fifteen-percent of Purchase Price], or fifteen percent (15%) of the Purchase Price, in the form of cash or other immediately available funds (together with all interest thereon, the "**Deposit**") in a non-comingled, interest bearing account. At Closing, the Purchaser shall deliver the Deposit to Seller and credit it against the Purchase Price or shall return the Deposit before then as set forth herein.

1

4842-3765-2569.v5

4.   REPRESENTATIONS AND WARRANTIES.

4.1 <u>Seller's Representations and Warranties</u>.   Seller represents to Purchaser as of the Effective Date:

4.1.1   Except as permitted under the Bidding Procedures Order identified below, Seller has not entered into and shall not negotiate a sale of the Assets with any other person or entity or enter into any other contract to sell the Assets.

4.1.2   Seller is not a "foreign person," "foreign trust" or "foreign corporation" within the meaning of the United States Foreign Investment in Real Property Tax Act of 1980 and the Internal Revenue Code of 1986, as subsequently amended.

4.1.3   The Seller has filed a motion under Section 363 of the Bankruptcy Code seeking to sell the Assets to the Purchaser, subject to higher and better offers.

4.2 <u>Purchaser's Representations and Warranties</u>.  Purchaser represents to Seller that, as of the Effective Date:

4.2.1   <u>Organization</u>.   Purchaser is duly formed, validly existing and in good standing under the laws of the state of its organization.

4.2.2   <u>Authority/Consent</u>.  Purchaser possesses all requisite power and authority, has taken or will by Closing have taken all actions required by its organizational documents and applicable law, and has obtained all necessary consents, to execute and deliver this Agreement and to consummate the transactions contemplated in this Agreement.

4.2.3   <u>Nature of Transaction</u>.  The purchase of the Assets is not contingent upon financing of any nature or kind.

5.   COVENANTS PRIOR TO CLOSING.

5.1 <u>Receipt of Governmental Notices</u>.  Prior to Closing, Seller shall provide Purchaser with copies of any written notices that Seller receives with respect to (i) any special assessments or proposed increases in the valuation of the Assets or (ii) any violation of any environmental law or any zoning, health, fire, safety or other law, regulation or code applicable to the Assets.

5.2 <u>Litigation</u>.   Seller will advise Purchaser promptly of any litigation, arbitration proceeding or administrative hearing which concerns or affects the Assets in any manner and which is instituted after the Effective Date.

5.3 <u>Insurance</u>.  Prior to Closing, Seller will maintain Seller's existing insurance coverage with respect to the Assets.

5.4 <u>Property Information</u>. Prior to Closing, Seller shall provide all information requested by Purchaser regarding the Assets ("**Property Information**"), subject to the confidentiality provisions hereof.

6.  CONDITIONS PRECEDENT TO CLOSING.

6.1 Conditions Precedent to Purchaser's Obligations to Close.  Purchaser's obligation to purchase the Assets is subject to satisfaction on or before the Closing Date (as such date may be extended as provided herein) of the following conditions, any of which may be waived in writing by Purchaser in Purchaser's sole and absolute discretion:

6.1.1  Covenants.  Seller shall have performed and observed in all material respects all covenants of Seller under this Agreement.

6.1.2  Representations and Warranties.  All representations and warranties of Seller set forth in this Agreement shall be true and correct in all material respects as if made on the Closing Date.

6.2 Conditions Precedent to Seller's Obligation to Close.  Seller's obligation to sell the Assets is subject to satisfaction, on or before the Closing Date (as such date may be extended as provided herein) of the following conditions, any of which may be waived in writing by Seller in Seller's sole and absolute discretion:

6.2.1  Covenants.  Purchaser shall have performed and observed, in all material respects, all covenants of Purchaser under this Agreement.

6.2.2  Representations and Warranties.  All representations and warranties of Purchaser set forth in this Agreement shall be true and correct in all material respects as if made on the Closing Date.

6.3 Failure of a Condition.

6.3.1  In the event that any condition precedent to Closing has not been satisfied on or before the Closing Date, then the party whose conditions to Closing have not been satisfied (the "**Unsatisfied Party**") shall give notice to the other of the condition or conditions which the Unsatisfied Party asserts are not satisfied.  In such notice the Unsatisfied Party shall also elect either (i) to extend the Closing Date for a reasonable period of time (not to exceed twenty (20) days) to allow the satisfaction of the applicable condition, or (ii) to terminate this Agreement, whereupon (a) all Property Information provided to Purchaser by Seller, including copies thereof in any form whatsoever, including electronic form, shall be returned to Seller, along with any and all tests and studies of the Property performed by or on behalf of Purchaser, and (b) neither party shall have any further rights or obligations hereunder (other than any obligations of either party that expressly survive termination), except if such failure of a condition is due to a default by one of the parties, in which event the non-defaulting party shall have those rights and remedies set forth in Article 9.

6.3.2  If the transaction contemplated by this Agreement closes, then the parties shall be deemed to have waived any and all unmet or unsatisfied conditions, other than any unmet or unsatisfied conditions arising out of a breach by either party of any of its representations and warranties hereunder of which the other party has no knowledge as of Closing.

149936527.3

4842-3765-2569.v5

6.4 <u>Bankruptcy Conditions</u>. The obligations of each Party to consummate the transactions contemplated by this Agreement shall be subject to entry of the Bid Procedures Order (defined below) by January 26, 2019.  The Seller has made efforts to sell or refinance the Assets leading to this Agreement.  Seller will seek approval from the Bankruptcy Court of the following procedures and bid protections for Purchaser, who for such purpose will be treated as the "stalking horse."

6.4.1   <u>Approval of Break-Up Fee and Expense Reimbursement</u>.  Seller acknowledges and agrees that Purchaser has expended considerable time and expense in connection with this Agreement and the negotiation thereof and the identification and quantification of assets of Seller.  In consideration therefor:

6.4.1.1 Seller shall file a bidding procedures motion with the Bankruptcy Court, and seek the entry by the Bankruptcy Court of a bidding procedures order ("**Bidding Procedures Order**");

6.4.1.2 In order for any other bidder to submit a qualified bid (each, a "**Qualified Bid**"), it must be:

(i)     in writing;

(ii)     received by Seller and Purchaser at their respective addresses set forth herein no later than the deadline for submitting a bid agreed to by the parties and approved by the Bankruptcy Court (the "**Bid Deadline**");

(iii)     a bid to purchase or otherwise provide value for the Assets that is subject to determination by the Bankruptcy Court to be a higher and better bid than provided in this Agreement, with both Seller and Purchaser reserving the right to support or oppose any such determination by the Bankruptcy Court;

(iv)     a purchase price of at least $10,000 in excess of the Purchase Price plus the Break-Up Fee;

(v)     accompanied by sufficient information to demonstrate that the competing bidder has the financial wherewithal and ability to timely consummate the acquisition of the Assets on terms and conditions proposed in the Qualified Bid, including evidence of adequate financing and a financial guaranty, if appropriate;

(vi)     accompanied by a signed contract which, if substantially in the form of this Agreement, will also include a mark-up to show any changes made to this Agreement; and

(vii)     accompanied by a good faith cash deposit in an amount equal to the Deposit, to be deposited with Seller on or before the Bid Deadline.

6.4.1.3 Seller shall promptly inform Purchaser of all Qualified Bids and any information received related to the terms and conditions of such Qualified Bids;

149936527.3

4842-3765-2569.v5

6.4.1.4 Seller shall evaluate all Qualified Bids received and shall determine which Qualified Bid reflects the highest or best offer as the Starting Auction Bid for the Assets. Seller shall announce its determination of the Starting Auction Bid at the commencement of the Auction;

6.4.1.5 The first incremental competitive bid at the Auction shall be at least $10,000 in excess of the Starting Auction Bid, with any subsequent increases of bids to be made in increments of at least $10,000;

6.4.1.6 No bids shall be considered by Seller unless a party submitted a Qualified Bid and participates in the Auction;

6.4.1.7 If one or more overbids from a purchaser other than Purchaser is accepted but fails to be consummated, Seller shall be obligated to consummate the transaction with Purchaser, at Purchaser's option, on the terms of this Agreement, except for the purchase price, which shall equal the purchase price of the next highest bid that was submitted to Seller during the Auction; and

6.4.1.8 In the event that Seller determines in good faith that it has not received a Qualified Bid by the Bid Deadline that is a higher or better bid than the one represented by this Agreement, Seller shall seek approval of this Agreement at the hearing or hearings held by the Bankruptcy Court to consider the transactions contemplated by this Agreement (the "**Sale Hearing**") without conducting an Auction and without further motion.

6.4.2    <u>Entry of Order Approving Sale</u>.  By March 31, 2019, unless extended by agreement of Seller and Purchaser, the Bankruptcy Court shall have entered a final non-appealable order authorizing the free-and-clear sale of the Assets to Purchaser pursuant to this Agreement (the "**Sale Order**"), which among other things, pursuant to sections 105, 363 and 365 of the Bankruptcy Code:

6.4.2.1 approves this Agreement and authorizes the sale of the Assets by Seller to Purchaser on the terms set forth herein;

6.4.2.2 provides that the sale of the Assets vests Purchaser with all right, title and interest of Seller in, to and under the Assets free and clear of all encumbrances and on an "AS IS" and "WHERE IS" basis, without any representations or warranties of any kind (including no representations or warranties as to merchantability, fitness or use) other than those specifically set forth in this Agreement;

6.4.2.3 finds that Purchaser has provided adequate assurance of future performance under any service contracts and otherwise approves the assumption of such service contracts and assignment to Purchaser;

6.4.2.4 finds that Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and is entitled to the protections thereof;

6.4.2.5 finds that the sale of the Assets to Purchaser pursuant to the terms of this Agreement constitutes a transfer for reasonably equivalent value and fair consideration

under the Bankruptcy Code and the laws of the states in which Seller is incorporated and any other applicable non-bankruptcy laws;

6.4.2.6 enjoins all Persons from taking any actions against Purchaser or its affiliates to recover any claim which such Person has against everyone other than unrelated claims the Person may have against Purchaser;

6.4.2.7 provides that the Assets shall be conveyed free of any obligations of Seller relating to taxes, whether arising under law, by this Agreement, or otherwise;

6.4.2.8 provides that the provisions of the Sale Order are non-severable and mutually dependent;

6.4.2.9 provides that Purchaser will not have any successor or transferee liability for liabilities of Seller or associated in any way with the Assets (whether under federal or state law or otherwise) as a result of the sale of the Assets; and

6.4.2.10 authorizes Seller to execute such other documents and instruments and take such other actions as may be reasonably necessary or appropriate to allow the consummation of the transactions contemplated hereby.

7. <u>CLOSING</u>.

7.1 <u>Closing Date</u>.  The consummation of the transaction contemplated hereby (the "**Closing**") will take place at the office of Seller's counsel in Omaha, Nebraska, on the date (the "**Closing Date**") that is no later than fifteen (15) calendar days after the entry of non-appealable Sale Order (in a form reasonably acceptable to Purchaser), pursuant to which the Seller is authorized to transfer the Assets to the Purchaser pursuant to this Agreement, and free and clear of all liens, claims, rights and interests of all persons and entities.  The Closing may be performed "by mail" so as not to require the physical presence of the parties at the applicable location.

7.2 <u>Seller's Obligations at the Closing</u>.  At the Closing, Seller will do, or cause to be done, the following:

7.2.1  <u>Closing Documents</u>.  Seller shall execute, acknowledge (if necessary) and deliver originals of the following documents:

7.2.1.1 A Bill of Sale;

7.2.1.2 A Certificate of Non-Foreign Status;

7.2.2  <u>Possession</u>.  Seller will deliver possession of the Assets.

7.3 <u>Purchaser's Obligations at the Closing</u>.  At the Closing, Purchaser will do, or cause to be done, the following:

4842-3765-2569.v5

7.3.1 <u>Closing Documents</u>.  At Closing, Purchaser will pay to Seller the Purchase Price, as adjusted in accordance with the provisions of this Agreement (with credit for the Deposit).

7.4 <u>Escrow</u>.  The delivery of the documents and the payment of the sums to be delivered and paid at the Closing shall be accomplished through an escrow with an escrow agent to be determined by Seller and Purchaser.

8.  <u>RISK OF LOSS, DAMAGE, CONDEMNATION.</u>

8.1 <u>Risk of Loss</u>.  Risk of loss for damage to the Assets, or any part thereof, by fire or other casualty from the Effective Date through the Closing Date will be on Seller, except for any damage or liabilities caused by Purchaser, its agents, representatives, invitees, employees or contractors.

8.2 <u>Damage</u>.  If, prior to the Closing, all or a material portion of the Assets is damaged by fire or any other cause whatsoever, Seller shall promptly give Purchaser written notice of such damage.

8.2.1 <u>Minor Damage</u>.  If the cost for repairing such damage is One Million Dollars ($1,000,000.00) or less (as determined by Seller's independent insurer), then Purchaser shall have the right at Closing to receive the amount of the deductible plus all insurance proceeds received by Seller as a result of such loss, or an assignment of Seller's rights to such insurance proceeds, and this Agreement shall continue in full force and effect with no reduction in the Purchase Price and Seller shall have no further liability or obligation to repair such damage or to replace the Assets.

8.3 <u>Condemnation</u>.  In the event that any condemnation proceedings are instituted, or notice of intent to condemn is given, prior to the Closing, the Closing shall proceed, without reduction of the Purchase Price, and the right to collect any condemnation award or compensation for such condemnation shall be assigned by Seller to Purchaser at Closing.

9.  <u>REMEDIES AND ADDITIONAL COVENANTS</u>.

9.1 <u>Seller Default</u>.  In the event Seller breaches any of its representations or warranties (other than breaches of representations or warranties resulting from (i) changes in Seller's knowledge and/or (ii) conditions or events outside of Seller's reasonable control) or fails to perform any of its covenants in any material respect, and such breach or failure shall continue for a period of ten (10) Business Days after notice thereof from Purchaser, then Purchaser's sole and exclusive remedies shall be either (a) to file an action to obtain specific performance of Seller's obligation to deliver the Assets or (b) to terminate this Agreement by giving written notice thereof to Seller prior to or at the Closing, in which event the Deposit shall be returned to Purchaser, and, after the return to Purchaser of the Deposit, neither Seller nor Purchaser will have any further rights or obligations under this Agreement, except for any obligations that expressly survive termination. By written notice to Seller within ten (10) Business Days after the expiration of the ten (10) Business Day period set forth above, Purchaser shall elect whether to proceed under clause (a) or clause (b) above; if Purchaser fails timely to provide such notice, Purchaser shall conclusively be deemed to have elected to proceed under clause (b) above.  In no

7

4842-3765-2569.v5

event whatsoever shall Purchaser be entitled to any damages, rights or remedies against Seller as a result of any default of Seller hereunder, other than as specifically set forth in this Agreement.

9.2 <u>Purchaser Default</u>.  The parties acknowledge and agree that Seller should be entitled to compensation for any detriment suffered if Purchaser breaches any of its representations or warranties or fails to perform any of its covenants in any material respect but agree that it would be extremely difficult to ascertain the extent of the actual detriment Seller would suffer as a result of such breach and/or failure.   Consequently, if Purchaser breaches any of its representations or warranties (other than breaches of representations or warranties resulting from (i) changes in Purchaser's knowledge and/or (ii) conditions or events outside of Purchaser's reasonable control), fails to perform any of its covenants in any material respect, or otherwise defaults in its obligations hereunder, and such breach, failure or other default shall continue for a period of ten (10) Business Days after notice thereof from Seller (it being agreed, however, that such notice and cure period shall not be applicable to (a) Purchaser's failure timely to deliver the Deposit the Bank or (b) Purchaser's failure timely to consummate this Agreement), then Seller shall be entitled to terminate this Agreement by giving written notice thereof to Purchaser prior to or at the Closing, in which event the Deposit shall be paid to Seller as fixed, agreed and liquidated damages, and, after the payment of the Deposit to Seller, neither Seller nor Purchaser will have any further rights or obligations under this Agreement, except for any obligations that expressly survive termination.  In no event whatsoever shall Seller be entitled to any damages, rights or remedies against Purchaser as a result of any default of Purchaser hereunder, other than as specifically set forth in this Section.

10. <u>BROKERAGE COMMISSION</u>.

10.1    <u>Broker</u>.  Seller hereby represents and warrants to Purchaser that Seller has not engaged or entered into any agreement with any broker in connection with this transaction.  Purchaser hereby represents and warrants to Seller that Purchaser has not engaged or entered into any agreement with any real estate broker in connection with this transaction.

10.2    <u>Indemnity</u>.  Each party hereby indemnifies and agrees to hold the other party harmless from any loss, liability, damage, cost, or expense (including, without limitation, reasonable attorneys' fees) paid or incurred by the other party by reason of a breach of the representation and warranty made by such party under this Article.  Notwithstanding anything to the contrary contained in this Agreement, the indemnities set forth in this Section shall survive the Closing.

11. <u>NOTICES</u>.

11.1    <u>Written Notice</u>.  All notices, demands and requests which may be given or which are required to be given by either party to the other party under this Agreement must be in writing.

11.2    <u>Method of Transmittal</u>.  All notices, demands, requests or other communications required or permitted to be given hereunder must be sent (i) by United States certified mail, postage fully prepaid, return receipt requested, (ii) by hand delivery, (iii) by Federal Express or a similar nationally recognized overnight courier service, or (iv) by facsimile with both telephonic

8

4842-3765-2569.v5

confirmation and a confirmation copy delivered by another method set forth in this Section. All such notices, demands, requests or other communications shall be deemed to have been given for all purposes of this Agreement upon the date of receipt or refusal, except that whenever under this Agreement a notice is either received on a day which is not a Business Day or is required to be delivered on or before a specific day which is not a Business Day, the day of receipt or required delivery shall automatically be extended to the next Business Day.

11.3   Addresses.  The addresses for proper notice under this Agreement are as follows:

[INTENTIONALLY LEFT BLANK]

Either party may from time to time by written notice to the other party designate a different address for notices within the United States of America.

12. ASSIGNMENT.

Neither party shall have the right to assign this Agreement without the prior written consent of the other, which consent may be granted or withheld in the sole and absolute discretion of the party whose consent has been requested; provided, however, that at Closing Purchaser shall have the right to assign this Agreement to any entity that controls, is controlled by or is under common control with, Purchaser.  Any attempted assignment of this Agreement in violation of the foregoing sentence shall, at the option of the non-assigning party, be void and without force or effect.

13. MISCELLANEOUS.

13.1   Entire Agreement.  This Agreement embodies the entire agreement between the parties and cannot be varied except by the written agreement of the parties and supersedes all prior agreements and undertakings.

13.2   Modifications.  This Agreement may not be modified except by the written agreement of the parties.

13.3   Gender and Number.  Words of any gender used in this Agreement will be construed to include any other gender and words in the singular number will be construed to include the plural, and vice versa, unless the context requires otherwise.

13.4   Captions.  The captions used in connection with the Articles, Sections and Subsections of this Agreement are for convenience only and will not be deemed to expand or limit the meaning of the language of this Agreement.

13.5   Successors and Assigns.  This Agreement will be binding upon and inure to the benefit of the parties hereto and, subject to Article 122, their respective legal representatives, successors and assigns.

13.6   Controlling Law.  This Agreement will be construed under, governed by and enforced in accordance with the laws of the State of Nebraska.

149936527.3

4842-3765-2569.v5

13.7    Exhibits.  All exhibits, attachments, annexed instruments and addenda referred to herein will be considered a part hereof for all purposes with the same force and effect as if copied verbatim herein.

13.8    No Rule of Construction.  Seller and Purchaser have each been represented by counsel in the negotiations and preparation of this Agreement; therefore, this Agreement will be deemed to be drafted by both Seller and Purchaser, and no rule of construction will be invoked respecting the authorship of this Agreement.

13.9    Severability.  In the event any one or more of the provisions contained in this Agreement (except the provisions relating to Seller's obligations to convey the Assets and Purchaser's obligation to pay the Purchase Price, the invalidity of either of which shall cause this Agreement to be null and void) are held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability will not affect any other provisions hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had not been contained herein, provided, however, that the parties hereto shall endeavor in good faith to rewrite the affected provision to make it (i) valid and (ii) consistent with the intent of the original provision.

13.10    Time of Essence.   Time is important to both Seller and Purchaser in the performance of this Agreement, and both parties have agreed that TIME IS OF THE ESSENCE with respect to any date set out in this Agreement.

13.11    Business Days.  "**Business Day**" means any day on which business is generally transacted by banks in the jurisdiction in which the Assets are situated.  If the final date of any period which is set out in any paragraph of this Agreement falls upon a day which is not a Business Day, then, and in such event, the time of such period will be extended to the next Business Day.

13.12    No Memorandum; Confidentiality.  Purchaser and Seller agree not to record this Agreement or any memorandum hereof.  Purchaser agrees to hold the Property Information in strict confidence, and will not disclose such information to any person other than directors, officers, employees and agents of each, as well as to consultants, banks or other third parties working with Purchaser in connection with the transaction, in each case who need to know such information for the purpose of consummating this transaction.  This prohibition will not be applicable to disclosure of information required by applicable law, rule or regulation and will survive the termination of this Agreement for one (1) year, but will not survive a Closing to Purchaser.

13.13    Press Releases.   Prior to Closing, any release by Purchaser to the public of information with respect to the matters set forth in this Agreement will be made only in the form approved by Purchaser and Seller and their respective counsel.

13.14    Attorneys' Fees and Costs.  In the event either party is required to resort to litigation to enforce its rights under this Agreement, the prevailing party in such litigation will be entitled to collect from the other party all costs, expenses and attorneys' fees incurred in connection with such action.

13.15    <u>Counterparts and Expiration of Offer</u>.  This Agreement may be executed in multiple counterparts which shall together constitute a single document.    However, this Agreement shall not be effective unless and until all counterpart signatures have been obtained. An unsigned draft of this Agreement shall not be considered an offer by either party.

13.16    <u>Waiver of Jury Trial</u>.  EACH PARTY HEREBY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY EITHER PARTY IN CONNECTION WITH ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE RELATIONSHIP OF SELLER AND PURCHASER HEREUNDER, PURCHASER'S OWNERSHIP OR USE OF THE PROPERTY, AND/OR ANY CLAIMS OF INJURY OR DAMAGE.

13.17    <u>Anti-Money Laundering</u>.  Purchaser hereby represents its compliance with all applicable anti-money laundering laws, including, without limitation, the USA Patriot Act, and the laws administered by the United States Treasury Department's Office of Foreign Assets Control, including, without limitation, Executive Order 13224 (the "**Executive Order**"). Purchaser further represents (a) that it is not, and it is not owned or controlled directly or indirectly by any person or entity, on the SDN List published by the United States Treasury Department's Office of Foreign Assets Control and (b) that it is not a person otherwise identified by government or legal authority as a person with whom a U.S. Person is prohibited from transacting business.  As of the date hereof, a list of such designations and the text of the Executive Order are published under the internet website address www.ustreas.gov/offices/enforcement/ofac.  Purchaser covenants and agrees to deliver to Seller any certification or other evidence requested from time to time by Seller in its reasonable discretion confirming Purchaser's compliance with this Section 13.17.  Notwithstanding any other provision of this Agreement, the provisions of this Section 13.17 shall survive Closing.

[signatures follow on next page]

11

4842-3765-2569.v5

IN WITNESS WHEREOF, the parties have executed this Purchase and Sale Agreement as of the date first written above.

**SELLER**:

By: _____

Name: _____

Title: _____

**PURCHASER:**

By: _____

Name: _____

Title: _____

4842-3765-2569.v5

149936527.3

## <u>EXHIBIT A</u>

**ALL ASSETS OF SELLER, INCLUDING BUT NOT LIMITED TO ALL BOOKS AND RECORDS, EMPLOYEE FILES, AND EMPLOYEE BENEFIT FILES, EXCEPT THOSE ASSETS SPECIFICALLY IDENTIFIED BY AN AMENDMENT HERETO PRIOR TO CLOSING**

## EXHIBIT B
## LEASES, LICENSES, DISTRIBUTION AGREEMENTS, FRANCHISE AGREEMENT, AND OTHER EXECUTORY CONTRACTS TO BE ASSUMED AND ASSIGNED TO BUYER

## EXHIBIT C
## LIABILITIES TO BE ASSUMED BY THE BUYER

**EXHIBIT D**
**SCHEDULE OF CURE AMOUNTS**

**FORM OF SALE ORDER**

[to be attached]