## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF                               )        Case No. BK 18-81127-TLS
                                               )
EAT FIT GOT HEALTHY FOODS, LLC et al.[1]       )        Chapter 11
                                               )
                             Debtors.          )

## MOTION TO APPROVE FORM OF SALE ORDER, NOTICE OF FILING AND
## NOTICE SETTING OBJECTION/RESISTANCE DEADLINE

TO: ALL PARTIES IN INTEREST

      Pursuant to the hearing held before the Court today on that certain *Motion For Order Pursuant To 11 U.S.C. §§ 105(A), 363, Fed. R. Bank P. 6004, And Local R. Bank. P. 6004-1, Authorizing And Approving The Sale Of Substantially All Assets Free And Clear Of Liens, Claims, Interests, And Encumbrances* (Doc. No. 163) ("Sale Motion"), Debtors hereby request entry of the proposed Order attached and hereby incorporated by reference as Exhibit A, including but not limited to the Claims Agreement identified therein.

      NOTICE IS HEREBY GIVEN of this Motion. Notice is further given:

      1.  That the last day to object or resist this Motion, and the proposed Order, including the Claims Agreement, is **Tuesday, February 26, 2019** at 5:00 p.m. prevailing Central time.

      2.  That if the objection/resistance period expires without the filing of any objection or resistance, the Bankruptcy Court will consider entering the proposed Order approving the Sale Motion and Claims Agreement without further hearing.

      3.  That if a written objection is filed before the objection/resistance period expires, the Bankruptcy Court will hold a hearing on the written objection on **Wednesday, February 27, 2019** commencing at 11:00 a.m. prevailing Central time. Parties wishing to appear in person should appear at Robert V. Denney United States Courthouse, 100 Centennial Mall North, Room 461, Lincoln NE 68508. Parties intending to participate by telephone must dial into the AT&T TeleConference Center 5 minutes prior to the scheduled hearing at the toll free number 1-888-684-8852, access code 5799715, security code 0804. The court will not call the participants. PARTICIPANT INSTRUCTIONS FOR ENTERING PHONE CONFERENCE and TELEPHONE HEARING PROTOCOL can be found on the court docket. Affidavit evidence shall be filed prior to the hearing.

Dated: February 19, 2019

---

[1] Debtors in this case include: Eat Fit Go Omaha Kitchen, LLC, Eat Fit Go Kansas City Kitchen, LLC, Eat Fit Go Georgia Kitchen, LLC, Eat Fit Go Arizona Kitchen, LLC, Eat Fit Go Healthy Foods - Des Moines, LLC, Eat Fit Go Healthy Foods - Kansas City, LLC, EFG Shared Services, LLC (No Rev), Eat Fit Go Healthy Foods - Omaha, LLC, and Eat Fit Go Healthy Foods - Minnesota, LLC.

IN THE MATTER OF
Eat Fit Go Healthy Foods, LLC
Case No. BK 18-81127
9013 Notice

**EAT FIT GO HEALTHY FOODS, LLC ET AL., Debtors**

By: /s/ Nicholas Zluticky
    Paul M. Hoffmann (MO # 31922)
    Nicholas Zluticky (MO # 61203)
    Stinson Leonard Street, LLP
    1201 Walnut Street, Suite 2900
    Kansas City, MO 64106
    Phone: 816.842.8600
    Fax: 816.691.3495
    Email:    paul.hoffman@stinson.com
            nicholas.zluticky@stinson.com

    Counsel for Debtors

2 of 2

EXHIBIT A – PROPOSED ORDER

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT NEBRASKA

| | |
|---|---|
| In re: | Case No.  18-81127-TLS |
| EAT FIT GO HEALTHY FOODS, LLC, *et al.*,[1] | Chapter  11 |
| Debtors. | (Jointly Administered) |

**ORDER (I) APPROVING THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), having filed their *Motion for Order Pursuant to 11 U.S.C. §§ 105(a), 363, Federal Rule of Bankruptcy Procedure 6004, and Local Rule of Bankruptcy Procedure 6004-1, Authorizing and Approving the Sale of Substantially All Assets Free and Clear of Liens, Claims, Interests and Encumbrances* (Doc. 163) (the "Sale Motion"); and the Court having entered an *Amended Order Granting Motion for Order Approving Bidding Procedures* (Doc. 168) approving certain bidding procedures (the "Bidding Procedures Order") (Docs. 143 & 168); and Panorama Wellness, Inc. (the "Purchaser") having submitted a "Qualified Bid" for Debtors' "Assets" (as each term is defined in the Bidding Procedures Order) and being selected as the "Successful Bidder" for such assets (as defined in the Bidding Procedures Order); and Debtors and Purchaser having agreed

---

[1] The Debtors in these jointly administered cases are: 18-81127-TLS Eat Fit Go Healthy Foods, LLC; 18-81121-TLS Eat Fit Go Arizona Kitchen, LLC; 18-81122-TLS Eat Fit Go Georgia Kitchen, LLC; 18-81123-TLS Eat Fit Go Healthy Foods Des Moines, LLC; 18-81124-TLS Eat Fit Go Healthy Foods Kansas City, LLC; 18-81125-TLS Eat Fit Go Healthy Foods, Minnesota, LLC; 18-81126-TLS Eat Fit Go Healthy Foods Omaha, LLC; 18-81128-TLS Eat Fit Go Kansas City Kitchen, LLC; 18-81129-TLS Eat Fit Go Omaha Kitchen, LLC; 18-81130-TLS EFG Shared Services, LLC.

upon terms and conditions, as set forth in that certain Asset Purchase Agreement, dated February 15, 2019, and attached as Exhibit A (the "Purchase Agreement") for the Purchaser to acquire substantially all of Debtors' remaining assets; and the Debtors having received no higher and/or better bids than the transactions represented by the Purchase Agreement; and the Debtors having received confirmation with each counterparty to an executory contract or lease that is being assumed and assigned to Purchaser under the terms and conditions of the Purchase Agreement (the "Assumed Leases") regarding the assumption and assignment of each of the Assumed Contracts to the Purchaser, including the cure amounts associated therewith; and the Debtors having filed a *Request to Present Oral Testimony and Documents In Support of Motion for Order Pursuant to 11 U.S.C. 105(a), 363, Fed. R. Bankr. P. 6004, and Local R. Bankr. P. 6004-1, Authorizing and Approving the Sale of Substantially All Assets Free and Clear of Liens, Claims, Interests, and Encumbrances* (Doc. 187) (the "Debtors' Motion to Provide Sale Evidence"); and the Court having entered an Order granting Debtors' Motion to Provide Sale Evidence (Doc. No. ___); and the Declaration of Stephen George (Doc. No. 192) having been admitted; and no objections to the Sale Motion or the Purchase Agreement having been filed or otherwise presented; and a hearing having been held on February 19, 2019 (the "Sale Hearing") to consider the approval of the Purchase Agreement and the transactions set forth therein (the "Sale"); and upon all of the proceedings had before the Court and the Court having reviewed the Sale Motion, the Purchase Agreement, the evidence proffered in support of the Sale at the Sale Hearing, the lease communications, and all of the other transactions contemplated by the Purchase Agreement and this Order; and the Court having found that notice of the Sale Motion, the Bidding Procedures Order, the Purchase Agreement, the Sale, and all of the other transactions contemplated by the Purchase Agreement and this Order was properly, timely, adequate and sufficient under the circumstances; and the

2

Court having found and determined that the relief requested by Debtors at the Sale Hearing is in the best interests of the Debtors, their estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Sale Motion and in the evidence at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore:

**IT IS THEREFORE FOUND, ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:[2]**

1.     The Sale Motion is **GRANTED** as set forth herein, and the Sale, Claims Agreement and the other transactions contemplated by this Order and the Purchase Agreement are approved as set forth herein.   Entry into and performance under the Purchase Agreement and the consummation of the transactions contemplated thereby, including, without limitation, the Sale and the assumption and assignment of the Assumed Leases, is hereby authorized and approved. The terms of the Purchase Agreement (including the Purchase Price)[3] are hereby approved, and if there is any conflict between the terms of the Purchase Agreement and this Order, this Order shall govern.   The terms of the Claims Agreement are also hereby approved.

2.     The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that Purchaser reasonably deems necessary or appropriate to

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.   To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.   This Court has jurisdiction over all matters herein pursuant to 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).   Venue of these cases and proceedings is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

[3] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.

implement the Purchase Agreement and effectuate the transactions contemplated thereby and to take all further actions as may be necessary or appropriate to the performance of any other obligations contemplated by and under the Purchase Agreement.

## **TRANSFER OF THE PURCHASED ASSETS FREE AND CLEAR**

3.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, and in accordance with the Purchase Agreement, (a) the assets that are being purchased by Purchaser pursuant to the terms and conditions of the Purchase Agreement (the "Purchased Assets") shall (i) be transferred to Purchaser (and such transfers shall be legal, valid, and effective), and (ii) vest Purchaser with all right, title, and interest of Debtors in and to the Purchased Assets, and (b) the Purchased Assets shall be free and clear of all liens, claims, Encumbrances, and other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, with all such liens, claims, Encumbrances, and other interests of any kind or nature whatsoever (including, without limitation, any and all liens, claims, Encumbrances, and other interests arising under or in connection with the Debtors' pre- and post-petition financing facilities) to attach to the cash proceeds of the Sale (and not the Assumed Liabilities), in the order of their priority, with the same validity, force, and effect that they now have against the Purchased Assets (subject to any rights, claims, and defenses the Debtors or any parties in interest may possess with respect thereto).  Absent such relief Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated herein.

4.      Except as expressly provided for in the Purchase Agreement or this Order, all persons and entities holding liens, claims, Encumbrances, and/or other interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any taxes or successor or transferee liability, against or in Seller or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising

4

under or out of, in connection with, or in any way relating to, Seller, the Purchased Assets, the use or operation of the Purchased Assets prior to the Closing Date, Debtors' business or the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assumed Leases, are forever barred, estopped, and permanently enjoined from asserting against Purchaser, its successors and permitted assigns, its property and the Purchased Assets, such persons' or entities' liens, claims, Encumbrances, or other interests, including, without limitation, rights or claims based on any taxes or successor or transferee liability.

5.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to Purchaser in accordance with the Purchase Agreement and this Order.

6.      Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all liens, claims, Encumbrances, and other interests of any kind or nature whatsoever in and against the Purchased Assets.

7.      On the Closing Date, all persons or entities in possession of any of the Purchased Assets are directed to promptly surrender possession of such Purchased Assets to Purchaser.  Seller agrees to exercise commercially reasonable efforts to assist the Purchaser in assuring that all persons or entities that are currently, or on the Closing Date may be, in possession of any Purchased Assets (or any portion thereof) surrender possession of such Purchased Assets to either (a) Seller before the Closing or (b) Purchaser after the Closing.

8.      Following the Closing Date, none of the Debtors, their affiliates, or any creditor or holder of any lien, claim, Encumbrance, or other interest of any kind or nature whatsoever shall interfere with Purchaser's title to, or use and enjoyment of, the Purchased Assets, based on, or

5

related to, any such lien, claim, Encumbrance, or other interest, or based on any actions the Debtors may take in the above-captioned cases or otherwise.

9.      Access Bank shall be paid directly the Purchase Price payment allocated to Access Bank pursuant to Section 3 of the Purchase Agreement.  The Debtors, Access Bank, Sardor (Sam) Vakhidov ("Vakhidov"), Aaron McKeever ("McKeever") and Live Well Enterprises, LLC ("Live Well") have entered into a separate Agreement ("Claims Agreement") which shall be effective only upon entry of this Order and closing of the Sale, pursuant to which Access Bank, Vakhidov, McKeever and Live Well shall withdraw or release their respective claims against the Debtors' estates and the Debtors shall release any claims against Access Bank, Vakhidov, McKeever and Live Well and in addition, the Debtors shall convey and transfer to Access Bank the Vakhidov and McKeever Avoidance Actions (as defined in the Claims Agreement).  A copy of the Claims Agreement is attached to this Order as Exhibit "A" and by this reference incorporated herein.

## ASSUMPTION AND ASSIGNMENT OF THE ASSUMED LEASES

10.     Except as otherwise expressly provided in the Purchase Agreement or this Order, upon the Closing Date, pursuant to the lease communications and sections 105(a), 363, and 365 of the Bankruptcy Code, Seller is authorized to assume each of the Assumed Leases free and clear of all liens, claims, Encumbrances, and other interests of any kind or nature whatsoever.  Upon assignment to Purchaser, the Assumed Leases shall be valid and binding, in full force and effect, and enforceable by Purchaser in accordance with their respective terms.  Purchaser has provided adequate assurance of future performance under any and all Contracts and Assumed Leases.

11.     To the extent that there are Cure Amounts specified in the lease communications, the Cure Amounts shall be paid by Purchaser from the Purchase Price proceeds, as set forth in Section 3.1.6 of the Purchase Agreement.

6

12.     The Assumed Leases shall remain in full force and effect, and no default shall exist under any of the Assumed Leases, nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default, notwithstanding any provision in the Assumed Leases or other restrictions prohibiting their assignment or transfer.  To the extent that the Assumed Leases constitute unexpired leases under section 365 of the Bankruptcy Code, all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors of such Assumed Leases have been satisfied.  Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, (a) Purchaser shall be fully and irrevocably vested with all right, title, and interest of the applicable Debtor in and under the Assumed Leases, (b) Purchaser shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assumed Leases, and (c) the applicable Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Leases.

13.     There shall be no right to payment, termination, modification, acceleration (including acceleration of any purchase option contained in any Assumed Lease) or cancellation, assignment fees, increases, or any other fees charged to the Debtors and/or Purchaser affiliated with each Assumed Lease as a result of the execution and delivery by Purchaser of the Purchase Agreement or any related documents, the consummation of the Sale, or the compliance by Purchaser with any provisions in the Purchase Agreement.

14.     Any provision in any Assumed Lease that prohibits or conditions the assignment of such Assumed Lease or allows the counterparty to such Assumed Lease to impose any penalty, fee, rent increase, profit sharing arrangement, or other condition on renewal or extension, or to modify any term or condition upon the assignment of such Assumed Lease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect in connection with the Sale.

7

Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assumed

Leases are forever barred and permanently enjoined from raising or asserting against the Debtors

and/or Purchaser any assignment fee, default, breach or claim of pecuniary loss, or condition to

assignment, arising under or related to the Assumed Leases and existing as of and including the

Closing Date, or under the Purchase Agreement or arising by reason of the consummation of the

transactions contemplated by the APA, including, without limitation, the Sale and the assumption

and assignment of the Assumed Leases.

15.    Any and all contracts, leases, and agreements that are not Assumed Leases pursuant

to the Purchase Agreement shall be deemed to be rejected, cancelled, and /or terminated effective as

of the Closing Date.

## NO SUCCESSOR OR TRANSFEREE LIABILITY

16.    Other than as expressly set forth in the Purchase Agreement, none of Purchaser, its

present or contemplated members, partners, officers, directors or shareholders, its successors or

permitted assigns, or any of the foregoing's respective affiliates, agents, officials, personnel,

representatives, or advisors, shall have any liability for any claim assertable against the Debtors or

their estates or related to the Purchased Assets.  Purchaser shall not be deemed, as a result of any

action taken in connection with the Purchase Agreement or any of the transactions or documents

ancillary thereto or contemplated thereby, or in connection with the transfer of the Purchased

Assets (a) to be a legal successor, or otherwise be deemed a successor to the Debtors, (b) to have,

de facto or otherwise, merged with or into the Debtors, or (c) to be a mere continuation or

substantial continuation of the Debtors or the enterprise of the Debtors.  Without limiting the

foregoing, Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of

any kind or character for any claims, including, without limitation, under any theory of successor

8

or transferee liability, <u>de facto</u> merger or continuity, environmental, tax, labor and employment, products, or antitrust liability, whether known or unknown as of the Closing Date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

17.     Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against Purchaser, its past, present, or contemplated members, partners, officers, directors or shareholders, or its successors or permitted assigns, or their respective assets, including, without limitation, the Purchased Assets, with respect to any claim against the Debtors.

18.     Except for the Assumed Liabilities or as may be expressly provided for in the Purchase Agreement or this Order, Purchaser shall not have any obligation or responsibility for any liability of Seller or its estate arising under or related to the Purchased Assets or otherwise.

19.     Without limiting the generality of the foregoing, none of Purchaser, its affiliates, its past, present or contemplated members, partners, officers, directors or shareholders, or the Purchased Assets, shall have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any liens, claims, Encumbrances, or other interests relating to any U.S. federal, state, or local income tax liabilities, including, without limitation, any such tax liabilities that are attributable to the recapture of an excess loss account under Treasury Regulation Section 1.1502-19 (or any similar provision of state or local tax law), that the Debtors are or may be obligated for or incur in connection with consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assumed Leases.

## **GOOD FAITH OF PURCHASER**

20.      The transactions contemplated by the Purchase Agreement, including, without

limitation, the Sale and the assumption and assignment of the Assumed Leases, were undertaken

by Purchaser without collusion and in good faith, as that term is used in section 363(m) of the

Bankruptcy Code, and were negotiated by the parties at arm's length, and accordingly, (a) may not

be avoided under section 363(n) of the Bankruptcy Code, and further, (b) the reversal or

modification on appeal of the authorization provided in this Order to consummate the transactions

contemplated by the Purchase Agreement shall not affect the validity of such transactions, unless

such authorization is duly stayed pending such appeal.

## **NO FRAUDULENT TRANSFER**

21.      The consideration (including the Purchase Price) provided by Purchaser for the

Purchased Assets pursuant to the Purchase Agreement is (a) fair and reasonable, (b) is the highest

and best offer for the Purchased Assets, (c) will provide a greater recovery for the Debtors'

creditors and estates than would be provided by any other practical available alternative, and (d)

constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and

under the laws of the United States and each state, territory, possession, and the District of

Columbia.

## **RELATED RELIEF**

22.      Within two (2) business days following Closing, Debtors shall send Sysco Lincoln

an authenticated demand to file a termination statement of Sysco Lincoln's UCC financing

statement regarding Debtors pursuant to Neb. UCC § 9-513 if no such termination statement has

been filed.  Pursuant to Neb. UCC § 9-513, if, within twenty (20) days, Sysco Lincoln fails to

either terminate the filing or send a termination statement to Debtors that the Debtors can file, Debtors shall file a UCC-3 termination statement of the financing statement.

23.     Debtors shall use the portion of the Purchase Price proceeds payable to Debtors in accordance with the terms of the Purchase Agreement (but not any proceeds payable to Access Bank) to pay any and all administrative claims owned or held by Debtors' trade vendors, including administrative expense claims arising under 11 U.S.C. § 503(b), whether or not such trade vendors have filed an administrative claim to date.  Neither Purchaser nor Access Bank has any liability or obligation for payment of any such administrative claims.

24.     No governmental (federal, state, and municipal) approvals are necessary to consummate the Sale.

25.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and obtaining a stay prior to the Closing Date or risk its appeal being foreclosed as moot.

26.     Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to (a) enforce any of its remedies under the Purchase Agreement or any other sale-related document, and (b) the extent necessary to implement the terms of the Purchase Agreement and this Order.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence.

27.     The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon the Debtors, the estates, all creditors, all holders of equity interests in any of the Debtors, all holders of any Claims, all counterparties to each Assumed Lease, all interested parties

11

in the above-captioned bankruptcies and their respective successors and assigns, Purchaser and its

successors and permitted assigns, and any trustees, if any subsequently appointed in any of the

Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of

the Debtors' cases.

28.     No law of any state or other jurisdiction relating to bulk sales or similar laws shall

apply in any way to the transactions contemplated by the Purchase Agreement, including, without

limitation, the Sale and the assumption and assignment of the Assumed Leases, the Sale Motion, and

this Order.  As the assignment, transfer and/or sale of the Purchased Assets: (a) is in exchange for

the Purchase Price, no withholding of U.S. federal income tax pursuant to Sections 1441 or 1442 of

the Internal Revenue Code is required, and (b) constitutes a casual sale or occasional sale, it is exempt

from Nebraska sales and use tax.

29.     No order concerning the distribution of the Sale proceeds, no distribution of the Sale

proceeds, and no allocation in connection with either of the foregoing shall affect or have an effect

on (a) Purchaser's tax basis, allocation, or other tax position regarding the Purchased Assets, or (b)

how Purchaser accounts for the Purchased Assets in financial statements, tax matters, or otherwise.

30.     The failure to specifically include any particular provision of the Purchase

Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the

intent of the Court that the Purchase Agreement and its exhibits and any ancillary documents be

authorized and approved in their entirety.

31.     The Purchase Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto and in accordance

with the terms thereof, without further order of the Court; _provided_ that any such modification,

amendment, or supplement does not have a material adverse effect on the Debtors' estates nor

12

150731645.2

modifies the terms of the Purchase Agreement applicable to Access Bank, including the Purchase Price proceeds payable to Access Bank pursuant to the Purchase Agreement nor has a material adverse effect on the Agreement identified in Paragraph 9 above.  Any such proposed modification, amendment, or supplement that does have a material adverse effect on the Debtors' estates or modifies the terms of the Purchase Agreement applicable to Access Bank or has a material adverse effect on the Agreement referenced in Paragraph 9 above shall be subject to further order of the Court, on five (5) days' prior notice.

32.     Upon the closing of the Sale, this Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets and Assumed Leases, or a bill of sale transferring good and marketable title in and to the Purchased Assets and Leases, to Purchaser pursuant to the terms of the Purchase Agreement.

33.     The provisions of this Order are non-severable and mutually dependent on each other.

34.     This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the Purchase Agreement, all exhibits and ancillary documents, any amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, in all respects.


Dated:  February __, 2019              _____

THE HONORABLE THOMAS L. SALADINO
UNITED STATES BANKRUPTCY JUDGE

13

150731645.2

## AGREEMENT

This Agreement is by and among (i) Eat Fit Go Omaha Kitchen, LLC, Eat Fit Go Kansas City Kitchen, LLC, Eat Fit Go Georgia Kitchen, LLC, Eat Fit Go Arizona Kitchen, LLC, Eat Fit Go Healthy Foods - Des Moines, LLC, Eat Fit Go Healthy Foods - Kansas City, LLC, EFG Shared Services, LLC (No Rev), Eat Fit Go Healthy Foods - Omaha, LLC, and Eat Fit Go Healthy Foods - Minnesota, LLC (together, the "Debtors"); (ii) Sardor (Sam) Vakhidov ("Vakhidov"); (iii) Aaron McKeever ("McKeever"); (iv) Live Well Enterprises, LLC ("Live Well"); and (v) Access Bank, a Nebraska state bank ("Access Bank")(each, a "Party").

### PRELIMINARY STATEMENT

A.      On July 31, 2018 (the "Petition Date"), each of the Debtors filed Chapter 11 petitions with the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court").

B.      The Debtors' individual Chapter 11 cases (the "Chapter 11 Cases") are jointly administered under Case No. 18-81127-TLS.

C.      Vakhidov has asserted claims against one or more of the Debtors by filing proofs of claim docketed by the Bankruptcy Court as (i) Claim Number 60; (ii) Claim Number 62; (iii) Claim Number 64; and (iv) Claim Number 67 (collectively, the "Vakhidov Proofs of Claim").

D.      McKeever has asserted claims against one or more of the Debtors by filing proofs of claim docketed by the Bankruptcy Court as (i) Claim Number 59-1; and (ii) Claim Number 61-1 (collectively, the "McKeever Proofs of Claim").

E.      Live Well has asserted claims against one or more of the Debtors by filing proofs of claim docketed by the Bankruptcy Court as (i) Claim Number 56; and (ii) Claim Number 57 (collectively, the "Live Well Proofs of Claim").

F.      Access Bank has asserted claims against one or more of the Debtors by filing proofs of claim docketed by the Bankruptcy Court as (i) Claim Number 49; (ii) Claim Number 50; and (ii) Claim Number 51 (collectively, the "Access Bank Proofs of Claim").

G.      Additionally, Live Well has filed a motion (Doc. 41) ("Live Well's Administrative Expense Claim Motion") seeking, inter alia, allowance and payment of an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A) with priority as provided in 11 U.S.C. § 507(a)(2) in the amount equal to the rental arising under a certain lease agreement from and after the Petition Date ("Live Well's Administrative Expense Claim").

H.      The Debtors have objected to Live Well's Administrative Expense Claim Motion.

I.      The Debtors' have filed a motion seeking authority to sell substantially all of their assets (Doc. 163) (the "Sale Motion") pursuant to an Asset Purchase Agreement (the "APA"), by and among the Debtors and Panorama Wellness, Inc.

J.      Pursuant to Section 1.2.6 of the APA, claims and actions, whether known or unknown, that Debtors have or may have against Vakhidov and/or McKeever (the "Vakhidov and McKeever Litigation Claims") are not being acquired by the Purchaser and are retained by the Debtors.

K.      Prior to the Petition Date, Debtors and Access Bank entered into: (a) that certain Promissory Note dated as of February 7, 2017 with Eat Fit Go Healthy Foods – Minnesota, LLC as borrower, as modified; (b) that certain Business Loan Agreement dated February 7, 2017 with Eat Fit Go Healthy Foods – Minnesota, LLC as borrower; and (c) a number of commercial security agreements and guarantees (collectively, together with all promissory notes, related security and other ancillary documents, instruments, and agreements, the "Access Credit Agreements").

L.      Pursuant to the Access Credit Agreements, Access Bank asserts liens and security interests upon substantially all of the Debtors' assets including any claim (and/or the proceeds therefrom) that assets constituting Access Bank's collateral were conveyed in one or more transactions to Vakhidov and/or McKeever and are subject to avoidance pursuant to 11 U.S.C. §§ 548 and/or 544 (the "Vakhidov and McKeever Avoidance Actions").

M.      The Debtors, Access Bank, Vakhidov, McKeever and Live Well (each, a "Party" and collectively, the "Parties") desire to facilitate a consensual Order granting the Sale Motion through this Agreement.

## AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      <u>Representations and Warranties</u>.   Each Party represents and warrants to and covenants as follows:

Each Party (including the Debtors at such time as the Bankruptcy Court enters its Order approving this Agreement), has all requisite power and authority (if Party is an entity) or legal capacity (if Party is a natural person) to enter into this Agreement and to perform its, his or her obligations hereunder.  The execution and delivery of this Agreement by Party and the consummation by Party of the transactions contemplated hereby (including the Debtors at such time as the Bankruptcy Court enters its Order approving this Agreement),  have been duly authorized by all necessary action, if any, on the part of Party.  This Agreement has been duly executed and delivered by Party and constitutes a valid and binding obligation of Party, enforceable against each Party in accordance with its terms, subject only to the effect, if any, of (i) applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to rights of creditors generally and (ii) rules of law and equity governing specific performance, injunctive relief and other equitable remedies.

2.      <u>Effective Date</u>.    This Agreement shall be effective (the "Effective Date") only upon Closing of the APA after and subject to entry of an Order granting the Sale Motion and approving and authorizing the Debtors' execution and implementation of this Agreement (the "Approval Order") which Order shall, pursuant to Fed.R.Bankr. P. 6004(h), waive the stay of the effectiveness of the Approval Order. In the event the Closing of the APA after entry of the Approval Order shall not occur, for any reason, this Agreement shall be null and void.

4828-7675-6104.1
150731885.2

3.    Releases.    Upon the Effective Date,

i.    Live Well's Administrative Expense Claim, shall be deemed released and both Live Well's Administrative Expense Claim Motion and the Live Well Proofs of Claim shall be deemed withdrawn and Live Well shall be deemed to have released and discharged each of the Debtors fully, finally and forever from any and all claims, causes of action, debts, demands, liabilities, obligations and suits, of whatever kind or nature, in law or equity, that Live Well has, whether known or unknown, against any of the Debtors.

ii.    The Vakhidov Proofs of Claim shall be deemed withdrawn and Vakhidov shall be deemed to have released and discharged each of the Debtors fully, finally and forever from any and all claims, causes of action, debts, demands, liabilities, obligations and suits, of whatever kind or nature, in law or equity, that Vakhidov has, whether known or unknown, against any of the Debtors.

iii. The McKeever Proofs of Claim shall be deemed withdrawn and McKeever shall be deemed to have released and discharged each of the Debtors fully, finally and forever from any and all claims, causes of action, debts, demands, liabilities, obligations and suits, of whatever kind or nature, in law or equity, that McKeever has, whether known or unknown, against any of the Debtors.

iv. The Access Bank Proofs of Claim shall be deemed withdrawn and Access Bank shall not be entitled to any further distributions from the Debtors' estates provided, however, Access Bank shall be entitled to proceed with enforcement against any guarantors of the indebtedness and obligations evidenced by the Access Bank Proofs of Claim, including the guarantors Vakhidov, McKeever and Live Well and/or to enforce any security interests, liens, or assignments granted to Access Bank against any real estate or personal property pledged, granted or assigned to Access Bank as collateral for the indebtedness and obligations evidenced by the Access Bank Proofs of Claim, including but not limited to the Vakhidov and McKeever Avoidance Actions, but excluding any other property of the Debtors' estates. Vakhidov, McKeever and Live Well do hereby consent to Access Bank withdrawing such Access Bank Proofs of Claim and agreeing not to receive any further distributions from the Debtors' estates and do hereby reaffirm their continuing liability pursuant to their respective Guarantees granted to Access Bank for the indebtedness and obligations evidenced by the Access Bank Proofs of Claim and do hereby reaffirm any security interests or liens granted by Vakhidov, McKeever or Live Well to Access Bank to secure the payment and performance of such indebtedness and obligations.

v.    Except as to Vakhidov and McKeever Avoidance Actions, each of the Debtors shall be deemed to have released and discharged each of McKeever, Vakhidov and LiveWell fully, finally and forever from any and all claims, causes of action, debts, demands, liabilities, obligations and suits, of whatever kind or nature, in law or equity, that any Debtor has, whether known or unknown, against Vakhidov and/or McKeever and/or Live Well.

4828-7675-6104.1
150731885.2

vi.    Each of the Debtors shall be deemed to have released and discharged Access Bank fully, finally and forever from any and all claims, causes of action, debts, demands, liabilities, obligations and suits, of whatever kind or nature, in law or equity, that any Debtor has, whether known or unknown, against Access Bank.

vii. The Vakhidov and McKeever Avoidance Actions shall be deemed conveyed and transferred by Debtors to Access Bank free and clear of all liens claims and encumbrances, provided, however, Access Bank agrees that any recovery by Access Bank on the Vakhidov and McKeever Avoidance Actions shall be limited to such amount as may be necessary to pay in full the indebtedness and obligations evidenced by the Access Bank Proofs of Claim, including interest which continues to accrue thereon.

4.    Document Execution; Counterparts; Electronic Transmissions.    This Agreement may be executed in any number of counterparts and by different parties in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.    Signature pages may be detached from multiple separate counterparts and attached to a single counterpart.    An executed signature page of this Agreement that is an Electronic Transmission shall be as effective as delivery of a manually executed counterpart thereof.    *"Electronic Transmission"* means each document, instruction, authorization, file, information and any other communication transmitted, posted or otherwise made or communicated by e-mail or any system used to receive or transmit faxes electronically. This Agreement embodies the entire agreement between the parties and cannot be varied except by the written agreement of the parties and supersedes all prior agreements and undertakings. This Agreement may not be modified except by the written agreement of the parties. This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors and assigns. This Agreement will be construed under, governed by and enforced in accordance with the laws of the State of Nebraska.

EAT FIT GO OMAHA KITCHEN, LLC

By: _____
Its: _____ CEO _____

EAT FIT GO KANSAS CITY KITCHEN, LLC

By: _____
Its: _____ CEO _____

EAT FIT GO GEORGIA KITCHEN, LLC

By: _____
Its: _____ CEO _____

EAT FIT GO ARIZONA KITCHEN, LLC

4828-7675-6104.1
150731885.2

By: _____
Its: _____
        CEO

EAT FIT GO HEALTHY FOODS - DES MOINES, LLC

By: _____
Its: _____
        CEO

EAT FIT GO HEALTHY FOODS - KANSAS CITY, LLC

By: _____
Its: _____
        CEO

EFG SHARED SERVICES, LLC (NO REV)

By: _____
Its: _____
        CEO

EAT FIT GO HEALTHY FOODS - OMAHA, LLC

By: _____
Its: _____
        CEO

EAT FIT GO HEALTHY FOODS - MINNESOTA, LLC

By: _____
Its: _____
        CEO

ACCESS BANK

By: _____
Its: Commercial Banking officer

LIVE WELL ENTERPRISES, LLC

By: _____
Its: _____

5

4828-7675-6104.1
15073188S.2

By: _____
Its: _____

EAT FIT GO HEALTHY FOODS - DES MOINES, LLC


By: _____
Its: _____

EAT FIT GO HEALTHY FOODS - KANSAS CITY, LLC


By: _____
Its: _____


EFG SHARED SERVICES, LLC (NO REV)


By: _____
Its: _____

EAT FIT GO HEALTHY FOODS - OMAHA, LLC


By: _____
Its: _____

EAT FIT GO HEALTHY FOODS - MINNESOTA, LLC


By: _____
Its: _____

ACCESS BANK


By: _____
Its: _____

LIVE WELL ENTERPRISES, LLC


By: _____
Its: _____

5

SARDOR (SAM) VAKHIDOV

AARON MCKEEVER

4828-7675-6104.1
150731885.2

SARDOR (SAM) VAKHIDOV

AARON MCKEEVER

4828-7675-6104.1
150731885.2